VAN DE VERE v. KANSAS CITY *et al.*, *Appellants.*

DIVISION ONE.

1. **Constitution: DAMAGE TO PRIVATE PROPERTY: CITY: STREET GRADING.** The provision of the constitution ( art. 2, sec. 21 ) that private property shall not be taken or damaged for public use without just compensation extends to cases where property is damaged by reason of a change in the grade of a street on which the property abuts, and this is true, although the city had the charter power to change the grade. ( *Householder v. Kansas City*, 83 Mo. 488 ; *Sheehy v. Railroad*, 94 Mo. 574.)

| | |
|---|---|
| 107 | 83 |
| 107 | 205 |
| 107 | 83 |
| 111 | 34 |
| 50a | 103 |
| 107 | 83 |
| 113 | 315 |
| 107 | 83 |
| 119 | 185 |
| 107 | 83 |
| 122 | 139 |
| 124 | 137 |
| 107 | 83 |
| 68a | 649 |
| 107 | 83 |
| 153 | 572 |
| 107 | 83 |
| f156 | 32 |
| 107 | 83 |
| 163 | 279 |
| 107 | 83 |
| 179 | ² 56 |

Van De Vere v. Kansas City.

2. —— : ——. A property-owner, to entitle him to redress under the constitutional provision, must show that the property itself, or some right or easement connected with it, is directly affected and that it is specially affected.

3. —— : —— : FIRE-ENGINE HOUSE. A lot-owner cannot have a city enjoined from erecting a fire-engine house on an adjacent lot until compensation is made for the anticipated depreciation in value of his property in consequence of the noise and bustle incident to such structure, where no peculiar damages are shown,

4. Nuisance. A fire-engine house in a city, erected under the authority of its charter, is not *per se* a nuisance.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

*F. F. Rozzelle, W. S. Cowherd* and *F. H. Dexter* for appellants.

(1) The constitutional protection against damaging private property for public use does not embrace every loss or depreciation to property, which is due directly to public improvements. Unless the owner is disturbed in the enjoyment of some right which he is entitled to make use of in connection with his property, he cannot recover. If the loss or depreciation arises from the mere proximity of the work or improvements, as from its unsightly nature or its incongruity with the uses to which the neighboring property is put, there can be no recovery. As in the case of erection of jail on lot in a fashionable locality, whereby the value of property is depreciated. Lewis, Em. Domain, sec. 236 ; Dillon, Mun. Corp. [ 4 Ed.] sec. 587. To warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that

sustained by the public generally. *Rigney v. Chicago*, 102 Ill. 64, approved in *Chicago v. Taylor*, 125 U. S. 161 ; *Gottschalk v. Railroad*, 14 Neb. 550 ; *Reardon v. San Francisco*, 66 Cal. 492 ; *Moses v. Railroad*, 21 Ill. 516. (2) The property meant by the constitutional provision is that collection of rights secured by law in and over land or other thing which· in the aggregate constitute the owner's title thereto, his ownership, his right of use and enjoyment, and his right of disposition, as against competing claims upon the part of others. Dillon, Mun. Corp. [ 4 Ed.] 686. (3) Another phase of the rule that consequential damage cannot be recovered for public improvements is the inability of property-owners to obtain damages for disagreeable results of having railroad built and operated in street in front, upon grade. *Tate v. Railroad*, 64 Mo. 149. (4) As stated by this court the true rule is, that to recover for injury to abutting property occasioned by the use of a public street, the property-owner must show that the damages are peculiar to him, different in kind and not merely in degree from those suffered by other members of the community. *Rude v. St. Louis*, 93 Mo. 415 ; *Edmondson v. Moberly*. 98 Mo. 523. The supreme court will exercise a supervisory control over the finding of the lower court in equity cases. *McElroy v. Maxwell*, 103 Mo. 295.

*Karnes, Holmes & Krauthoff* for respondent.

(1) The provision in the constitution that private property shall not be damaged without just compensation is remedial in its character, and should receive a liberal construction to effect its object. *New Brighton v. United Church*, 96 Pa. St. 331; *Chester Co. v. Brower*, 117 Pa. St. 647 ; *Montgomery v. Townsend*, 80 Ala. 489 ; *Montgomery v. Maddox*, 89 Ala. 181. (2) Consequential damages can be recovered even if caused by public improvements. *Reading v. Althouse*, 93 Pa.

St. 400; *Pusey v. Allegheny*, 98 Pa. St. 522; *Edmundson v. Railroad*, 111 Pa. St. 316; *Chester Co. v. Brower*, 117 Pa. St. 647; *Railroad v. Walsh*, 124 Pa. St. 544; *Chicago v. Taylor*, 125 U. S. 161. This rule has been applied in *Coal Co. v. Chicago*, 26 Fed. Rep. 415; *McElroy v. Kansas City*, 21 Fed. Rep. 257, 261. And it accords with what has been said in this court in *Werth v. Springfield*, 78 Mo. 107, 110; *Householder v. Kansas City*, 83 Mo. 488; *Sheehy v. Cable Co.*, 94 Mo. 574, 579. (3) The fire .engine complained of in this case constitutes a nuisance. . See *Railroad v. Church*, 108 U. S. 317; *Railroad v. Hall*, 14 S. W. Rep. 259; *Railroad v. Angell*, 41 N. Y. Eq. 316; *Cogswell v. Railroad*, 103 N. Y. 10; *Ellis v. Railroad*, 63 Mo. 131; *Gibson v. Black*, 9 S. W. Rep. 379; *Appeal of Art Club*, 13 Atl. Rep. 537; *Lippincott v. Lasber*, 44 N. Y. Eq. 120; *Snyder v. Cabell*, 29 W. Va. 48. (4) The act of the defendant threatened a continuous nuisance. The remedy by injunction in such a case is well settled. Wood on Nuisances, secs. 769, 801; *Railroad v. Church*, 108 U. S. 317. (5) The testimony given by Drs. Johnson, Griffith and Whittaker as to the probable danger to result from the act complained of was sufficient to justify this injunction. *Evans v. Railroad*, 96 N. C. 45.

BLACK, J.—Plaintiff is the owner of two lots on Brooklyn avenue in Kansas City, and the defendant city is the owner in fee of a lot adjoining the plaintiff's lots. After the city had let a contract and commenced the construction of a fire-engine house upon the lot owned by it, the plaintiff commenced this suit, praying for an injunction. The circuit court found that the plaintiff would be greatly damaged by the use of the building for a fire-engine house, and enjoined the city and the contractors from proceeding with the work until compensation should be made to the plaintiff for such damage. From that decree the city appealed.

The plaintiff produced evidence to the following effect: That his lots are suitable for residence purposes only; that a number of residences had been erected in the immediate neighborhood; that he had in contemplation the erection of a residence on his lots, and that his property would be decreased in value from thirty-five to fifty per cent. by the erection of the building by the city; one witness says to the amount of $2,500. The evidence of three physicians is that the noise and commotion incident to such a structure would be uncomfortable and annoying to persons living in adjoining houses, and might have a damaging effect upon their nervous systems. These same witnesses say that other property on the same street and in the same block would also be injured, but not to the same extent.

On the other hand a physician of twenty-five years' standing testified that he owned and resided on property next to one of these engine houses, and that his property was not depreciated in value, nor was the health of his family affected thereby. Another witness gave evidence to the same effect. The proposed structure is to be set back ten or fifteen feet from the street line. It is designed for one hose wagon, a span of horses and five men. The alarm apparatus consists of a gong with telephone attachments. Fire bells are not used; but the alarms are loud enough to awaken the men.

1. An examination of the evidence leads us to the conclusion that the damages are overestimated by some of the witnesses; but for all the purposes of this case it will be assumed that the plaintiff's property will, to some extent, be depreciated in value by the erection of the fire-engine house and the use of the same for the designed purpose.

Our constitution of 1875 declares "that private property shall not be taken or *damaged* for public use without just compensation." The same clause in prior constitutions did not contain the word *damaged*; and

the first question is whether the change in the organic law secures to the plaintiff compensation for the damages which he will sustain under the circumstances of this case. Previous to the constitution of 1875 a very restricted meaning had been given to the words *taken* and *property*. Thus it was held in *St. Louis v. Gurno*, 12 Mo. 415, and affirmed in *Taylor v. St. Louis*, 14 Mo. 20, that the city was not liable in damages resulting to a property-owner from grading and paving a street, where the work was done under an ordinance authorized by the charter. The reason assigned was that to grade a street dedicated to public use was not the appropriation of private property to public use, but simply the exercise of a lawful power over what had become public property, and that the property-owner had no remedy for such consequential damages. And in *Hoffman v. St. Louis*, 15 Mo. 651, the same rule was applied where the grade of the street had been changed. The rule of these cases was disapproved in *Thurston v. The City of St. Joseph*, 51 Mo. 510 ; but in the case of *Schattner v. The City of Kansas*, 53 Mo. 162, the court returned to the old doctrine, and so the law continued down to the adoption of the constitution of 1875. The only exceptions were in those cases where the city charters or authorized ordinances prescribed a different rule. Cooley, in speaking of what would constitute a taking, says : "Any proper exercise of the powers of government, which does not directly encroach upon the property of an individual, or disturb him in its possession or enjoyment, will not entitle him to compensation or give him a right of action." Cooley on Const. Lim. [5 Ed.] 671. And it is said in *Trans. Co. v. Chicago*, 99 U. S. 635, "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.

They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action." Such were the rulings under former constitutions.

The eminent domain clause was amended so as to include cases where property is *damaged*, as well as "taken," to overcome the hardship growing out of the old rules, and what we are at this time concerned with is whether the amendment embraces cases like the one in hand. Thus far we have held that the amendment does extend to those cases where property is damaged by reason of a change in the grade of a street on which the property abuts, and this, too, though the city had the charter power to change the grade. *Householder v. The City of Kansas*, 83 Mo. 488; *Sheehy v. Railroad*, 94 Mo. 574.

In the case of *Rude v. City of St. Louis*, 93 Mo. 408, the plaintiff owned property on High street, five hundred feet distant from a point where railroad tracks crossed that street. The tracks were depressed by authority of authorized ordinances from four to six feet to conform to a system of bridges then in process of erection. The street was allowed to remain in this condition, impassable for teams for three years. The suit was one to recover damages for alleged permanent injuries to the property and depreciation in the rental value thereof, because of the obstruction in the street, and we held the plaintiff could not recover. A like result was reached in *Fairchild v. St. Louis*, 97 Mo. 85, and in *Canman v. St. Louis*, 97 Mo. 92. These cases were like the *Rude case*, except that in one plaintiff's property was three hundred and fifty feet, and in the other one hundred and twenty-five feet from the same obstruction. It was then held that, to bring a case within the amendment, the plaintiff, if suing for consequential damages, must show that he suffered an injury special and peculiar to his property, and that it was not enough to show a damage the same in kind as that

suffered by other persons, though different in degree. The plaintiffs in those cases were not deprived of access to the street, nor were any of their property rights disturbed. The inconvenience was the same as that of other persons desiring to pass on and along the street. It seems to be held under the English lands clauses consolidation act that, to recover for lands "injuriously affected," the plaintiff must show that he has sustained a peculiar damage. 3 Sedg. on Dam. [8 Ed.] sec. 1092.

Judge DILLON shows with great clearness that the old line of decisions overlooked the fact that an easement or incorporeal right annexed to land, as that of ingress and egress and light, is as much property as the right to the land itself, and that the various constitutional amendments were designed to protect these rights; but that it was not the intention of these amendments to create a right, and to give a remedy in all cases of consequential damages for injuries to private property. He says: "A city, for example, under legislative authority might condemn land for the purpose of establishing a hospital thereon or a prison, which, if established, would have the consequential effect to injure or depreciate the market or actual value of property in the neighborhood. Such injuries, however, would not, in our judgment, be within the constitutional amendment. This amendment must, as it seems to us, be limited to cases where the *corpus* of the owner's property itself, or some appurtenant right or easement connected therewith, or by the law annexed thereto, is directly (that is, in general, if not always, physically) affected, and is also specially affected (that is, in a manner not common to the property-owner and to the public at large); and such direct and special injury must be such as to depreciate the value of the owner's property." 2 Dill. on Corp. [4 Ed.] sec. 587*d*.

Mr. Lewis, though following a very liberal interpretation of the words "injured" "damaged," says:

"Unless the owner is disturbed in the enjoyment of some *right* which he is entitled to make use of in connection with his property, he cannot recover. If the loss or depreciation arises from the mere proximity of the work or improvement, or from its unsightly nature or its incongruity with the uses to which the neighboring property is put, there can be no recovery. There are no decided cases to which we can refer on this point, but we can easily illustrate our meaning. Suppose the public authorities purchase or condemn a lot in a fashionable residence locality and erect and maintain a jail thereon, and suppose the direct effect is to depreciate the surrounding property twenty-five or fifty per cent. Is the property so depreciated *damaged*, *injured* or *injuriously affected* within the meaning of the provisions in question? We answer in the negative, because the owners have not been disturbed, either in the enjoyment of their estates, or of any right connected with their estates." Lewis on Eminent Domain, sec. 236.

The amendment must be construed and applied in view of the evils which it was designed to remedy. We have seen that before this amendment there were many cases where the *corpus* of the property was not taken, yet rights directly annexed to the property were injured, and that for such consequential damages the property owner had no remedy, because the act was authorized by law. Whether the plaintiff must now, in all cases when claiming that his property has been "damaged" for public use, show that the injury is one for which he might have maintained an action if the act had not been done by authority of law, we need not say in this case. What we do say is this, that he must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected.

The plaintiff in this case has failed in both of these respects. In the first place his property is not directly affected by the proposed structure, he is not deprived

of any access to the street or any other incorporeal right annexed or attached to his property. Again, the annoyance which he or those occupying the property as a residence will be obliged to endure is not different from that to other persons within the sound of the gong or the commotion incident to the house, though it may be greater in degree. His property is not specially affected. If the plaintiff is entitled to damages in this case, then compensation must be allowed for any depreciation in the market value of property, arising from the erection of a court house, jail or other public building. The text-writers cited say such cases are not within the amendment, and to this we agree.

2. The defendant, it is admitted, has the charter power to erect fire-engine houses within the city; and it cannot be said that such a structure is a nuisance. That it may become one, by improper use, may be conceded, but that furnishes no ground for enjoining the erection of the house. There is some evidence that this building could be placed within a block or two of the present site, among shops and small stores, so as not to annoy residences; but, so long as the house is not made a nuisance by improper use, it is not for the courts to say where it shall be placed. People who congregate in cities must be prepared to submit to some inconveniences.

The judgment in this case is reversed and the bill dismissed. All concur.