FUNKE, *Appellant*, v. THE CITY OF ST. LOUIS.

### Division Two, May 24, 1894.

1. **Municipal Corporation**: PLATS OF ADJOINING LOTS: ACCEPTANCE: DAMAGE TO OTHER LOTS: LIABILITY OF CITY. Where plaintiff's lot was situated between two wider lots, all three of which abutted on the west on an established street running north and south, plaintiff's north line being coincident with the extension of the south line of an established cross street, and the owners of the two wider lots so platted them that the cross street was not extended along the north line of plaintiff's lot, but was extended west one hundred and fifty feet north of her north line and an alley run along her south line, all of which injuriously affected the value of her lot, such damage to plaintiff's lot caused by the platting and acceptance thereof by the city does not fall within section 21, article 2, of the constitution providing "that private property shall not be taken or damaged for public use without just compensation."

2. ———: ACCEPTANCE OF PLAT. The acceptance and approval of a plat by a city is a public municipal act, discretionary and judicial in its nature which the courts will not review, so long as no distinct legal duty has been violated. The exercise of such powers are necessary to good government and for a failure to exercise them or for their negligent or improper exercise no liability attaches to the city and no right of action accrues to anyone.

### *Appeal from St. Louis City Circuit Court.*

AFFIRMED.

This is a proceeding which plaintiff claims is bottomed on section 1815, Revised Statutes, 1889. She owns a tract of land having a front of one hundred and forty-six feet, eight and one-half inches on the west side of Marcus avenue, and extending westwardly one thousand, one hundred and thirty feet. Hogan owns a tract immediately north of plaintiff's having a front on the west side of Marcus avenue of two hundred and seventy-nine feet, by a depth westwardly of one thousand, one hundred and thirty feet. Hammet owns a tract, south of plaintiff's property, having a front on the west side of Marcus avenue of five hundred and

twenty-two feet by a depth westwardly of one thousand, one hundred and thirty feet.

Hammet subdivided his property so as to make a street one hundred feet in width extending westwardly from Marcus avenue, and further subdivided it into lots fronting said street on the north and south side thereof, with a depth of one hundred and ninety-three feet to such lots, and ran alleys, eighteen feet in width, along the north and south lines of his property, and an alley along the west line of the same, so that each of his said lots fronted on the street and had an opening on an alley. The alley on the north end of his property was next to the south line of plaintiff's property.

Afterwards Hogan subdivided his property by opening a street fifty feet in width extending westwardly through his property from Marcus avenue, and further subdivided it into lots fronting said street on the north and south sides thereof, and having a depth of one hundred and fifteen feet each. The rear of Hogan's lots, therefore, extended to the north line of plaintiff's property.

The city approved of these subdivisions and accepted the dedications of the streets and alleys made by Hammet and Hogan.

Plaintiff in this suit seeks to have commissioners appointed to assess the damages to her property caused by the subdivisions aforesaid, and contends that the city, under the section aforesaid, has made itself liable to her in damages because it approved of the plat of Hogan's subdivision of the city, and accepted the dedications therein contained.

Plaintiff further contends that having only one hundred and forty-six feet front, by a depth of one thousand, one hundred and thirty feet, it is impossible for her to run a street through her strip of land, and

thereby secure a front for lots which she might desire to lay off out of the depth of her lot.

She claims that her property has been damaged within the meaning of section 21 of article 2 of the constitution of Missouri, because the alley on the north line of Hammet's addition adjoins her property and because persons building on the Hammet tract will put their outhouses next to the alley and thereby damage her, and because persons building on the south line of the lots laid off in the Hogan subdivision, will put their outhouses on the rear of the lots next to her north line, which will be an injury to her property.

Prior to the subdivision of the Hammet and Hogan property, Cottage avenue was a public highway as far west as Marcus avenue. If Cottage avenue had been prolonged westwardly in a direct line, the south line thereof would have been coincident with the north line of plaintiff's lot, and would thereby have given her a front on Cottage avenue for the full depth of the one thousand, one hundred and thirty feet of her lot. The street dedicated by Hogan is one hundred and fifteen feet north of the north line of plaintiff's property, and is named Cottage avenue. Thus Cottage avenue west of Marcus avenue is not a direct prolongation of Cottage avenue east of Marcus avenue. The same state of facts is true with reference to St. Ferdinand avenue and to North Market street, south of plaintiff's property, except that the street dedicated by Hammet is named Hammet Place instead of taking the name of either St. Ferdinand avenue or North Market street. Still further north than Cottage avenue, is Kennerly avenue, which, west of Marcus avenue, is not a prolongation, on a direct line, of Kennerly avenue east of Marcus avenue.

The subjoined plat fully illustrates Hogan's subdivision and the situation of plaintiff's property.

On behalf of the city, a general demurrer was filed, and thereupon the circuit court held the petition insufficient in law, and gave judgment accordingly, from which plaintiff has appealed.

*Stone & Slevin* for appellant.

(1) This is the proper proceeding to have damages ascertained and assessed against the city for injuring private property for public use. R. S. 1889, sec. 1815; *Imler v. Springfield*, 30 Mo. App. 680; *Taylor v. Cable Co.*, 38 Mo. App. 673. (2) This proceeding is not an action, but a special proceeding under the statute, and does not require the fullness and particularity of a pleading at common law, and if the petition makes a *prima facie* case for the appointment of commissioners under the requirements of the statute a demurrer should not be sustained. *Gill v. Railroad*, 45 N. W. Rep. (Wis.) 23; *Marsden v. Cambridge*, 114 Mass. 490. (3) The right of the petitioner to have commissioners appointed and damages assessed does not depend upon the question as to whether or not the petitioner had any "legal right" to have a street opened up or established by the city so as to provide the most advantageous frontage to her property, as said by the circuit court, but upon the question as to whether or not the said property has been depreciated in value as a matter of fact, for the benefit of the public. Lewis on Eminent Domain, secs. 227, 131; *Omaha v. Kramer*, 25 Neb. 490; *Trowbridge v. Brookline*, 144 Mass. 139; *Marsden v. Cambridge*, 114 Mass. 490; *Parker v. Railroad*, 3 Cush. 107. (4) The words "or damaged" inserted in the constitution of Missouri in 1875, "are significant and are expressive of a deliberate purpose to change the organic laws of the state." They declare a new rule of civil conduct, from which spring new rights

which did not exist prior to the constitution of 1875. *Rigney v. Chicago*, 102 Ill. 64–74; Sedg. on Damages, sec. 1121; *City Council v. Maddox*, 89 Ala. 181. (5) Property is the right to possess, use, enjoy, dispose of, rent, sell, give away and devise; anything which interferes with the beneficial enjoyment of all these rights substantially diminishes them, and lessens the value of the property. And the constitutional provision that "no private property shall be taken or damaged for public use without just compensation," was intended to protect all these essential elements of ownership which make property valuable. Sedg. on Damages, sec. 1117; *Eaton v. Railroad*, 51 N. H. 504; *Rigney v. Chicago*, 102 Ill. 74. (6) Under said constitutional provision a recovery may be had in all cases where, through the exercise of the right of eminent domain, the market value of property is diminished. *Omaha v. Kramer*, 25 Neb. 493; *Reardon v. San Francisco*, 66 Cal. 492; *Atlanta v. Green*, 67 Ga. 386; *Railroad v. William*, 45 Ark. 429; *Chicago v. Taylor*, 125 U. S. 161; *Imler v. Springfield*, 30 Mo. App. 681. (7) The injuries for which the property owner is entitled to recover must be such as directly and specially affect the *corpus* of the owner's property, or some property right or easement connected therewith, or by the law annexed thereto; and if such direct, peculiar and special injury depreciated the value of the property, then it is "damaged" within the meaning of the constitution. By "specially affected" is meant "in a manner not common to the property owner and to the public at large. Dillon on Mun. Corp., sec. 587*d*; *Railroad v. Dawley*, 50 Mo. App. 485.

*W. C. Marshall* for respondent.

The judgment of the circuit court in sustaining defendant's demurrer was correct as shown by the fol-

lowing cases: *Rude v. St. Louis*, 93 Mo. 408; *Fairchild v. St. Louis*, 97 Mo. 85; *Canman v. St. Louis*, 97 Mo. 92; *Van De Vere v. Kansas City*, 107 Mo. 83. See, also, Lewis on Eminent Domain, sec. 236.

SHERWOOD, J.—I. The salient question presented by this record is whether the property of plaintiff has been injuriously affected in such a way as to fall within the meaning of the words *"taken or damaged,"* used in our constitution. That her property has not been *"taken"* will readily be conceded. Has it been *"damaged"* within that meaning? The contention of plaintiff is that it has. All of the cases cited in her behalf are those where some palpable injury has resulted to the owner as the immediate consequence of the exercise of the right of eminent domain. Thus, one of the authorities on which she strongly relies is the case of *Rigney v. Chicago*, 102 Ill. 64, where just such a constitutional provision as our own was discussed. There, where the city constructed a viaduct or bridge on a public street, near its intersection with another street, thereby cutting off access to the first named street from the plaintiff's house and lot over and along the street intersected, except by means of a pair of stairs, whereby the plaintiff's premises fronting on the latter street and near the obstruction were permanently damaged and depreciated in value, by reason of being deprived of such access, it was held the city was liable to the plaintiff in damages for the injury.

In that case, when discussing the force and effect of the word *"damaged"* as applied to the facts of that case, the court said: "While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury

that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *dammum absque injuria.*     *     *     *     In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."

Similar views were expressed in *Van De Vere v. Kansas City*, 107 Mo. 83, where a plaintiff owning two residence lots, sought to enjoin the city from erecting a fire engine house on an adjoining lot; and, though it was proved that the property would be decreased in value some thirty-five to fifty per cent. by the erection of the engine house, yet it was ruled that inasmuch as it was not shown that the proposed improvement would directly, injuriously and specifically, affect either the property of the plaintiff, or some right or easement connected therewith, that the plaintiff had not brought his case within the constitutional purport or purview of the word *"damaged."*

Treating of the same topic, in a recent work of merit it is said: "Unless the owner is disturbed in the enjoyment of some *right* which he is entitled to make use of in connection with his property, he can not recover. If the loss or depreciation arises from the mere proximity of the work or improvement, as from its unsightly nature or its incongruity with the uses to

which the neighboring property is put, there can be no recovery." Lewis on Em. Dom., sec. 236.

Tested by the rule enunciated in the authorities cited, plaintiff has suffered no such injury in respect of her property as can afford her any basis for relief.

The gist of plaintiff's complaint and the *gravamen* of her grievance after all, are that the plat of "Hogan's subdivision" was not so drawn as to extend Cottage avenue due west coincident with the north line of her property, and thus make it intrinsically far more valuable than it is at present. But, on the other hand Hogan could well say that, had Cottage avenue been extended as plaintiff desires, it would have injuriously affected *his* property in a similar way to that of which plaintiff complains. And it was but natural that Hogan in planning and platting his subdivision, should look rather to his own interest and the betterment of his own property than to that of plaintiff.

II.    And it was entirely competent for the city to accept and approve the plat proffered by Hogan for its acceptance, notwithstanding Cottage avenue was not projected due westward from Marcus avenue. Such act of acceptance and approval was a public municipal act, a discretionary act, an act judicial in its nature, over which the courts will not sit in review so long as no distinct legal duty has not been violated, because the exercise of such powers are necessary to good government, and for the failure to exercise them or for their negligent or improper exercise, no liability attaches to the city, and no right of action accrues to anyone. *McArthur v. Saginaw*, 58 Mich. 357; *Brevoort v. Detroit*, 24 Mich. 322; *Collins v. Mayor*, 77 Ga. 745; *City of Anderson v. East*, 117 Ind. 126; 2 Dillon on Mun. Corp. [4 Ed.], secs. 949, 950, 966, and cases cited; Elliott on Roads and Streets, 351, 352, 374, 375, and cases cited; *Murtaugh v. St. Louis*, 44 Mo. 479.

Gurley v. The Mo. Pac. R'y Co.

Viewed then in any light, the case of plaintiff must be regarded as one *damnum absque injuria.* Therefore judgment affirmed.   All concur.