CAMPBELL LUMBER COMPANY, Appellant, v. LEVEE DISTRICT NO. 4, J. J. CLENNY et al., Respondents.

Springfield Court of Appeals, December 31, 1914.

1. **LEVEES: Organization of Levee District: Collateral Attack Upon.** One who is not a taxpayer in a levee district cannot attack the legality of the organization thereof or its corporate existence in a purely collateral action.

2. ———: ———: **Notice: Collateral Attack.** That notice was not given under Sec. 5728, R. S. 1909, of the landowner's meeting to vote on the doing of the work connected with the establishment of a levee is not ground for collateral attack upon the corporate existence of a levee district organized under Sec. 5714, R. S. 1909.

3. ———: **Organization of Levee District: Public Corporations: For Public Welfare: Courts Reluctant to Interfere With.** Drainage districts are public corporations authorized by law to prevent the overflowing of land. They are organized partly at least under the police power of the State and to promote public welfare and must be given some discretion as to the methods employed to accomplish their work and the courts are loath to interfere with such methods.

4. **DAMAGES: Public Improvements: Damnum Absque Injuria.** In effecting public improvements, damages often follow which are remote and consequential. The courts regard them as *damnum absque injuria.*

5. **LEVEES: Levee Districts: Injunction to Compel Connection.** Plaintiff owned lands which lay in an upper levee district, organized after defendant levee district. He was not entitled by injunction to compel defendant district to connect its levee with that of the upper district.

Appeal from Pemiscot County Circuit Court.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*T. R. R. Ely* and *Virgil McKay* for appellant.

(1) The evidence in this case shows that district number 4 was not organized according to law and therefore has no authority or power to proceed with the construction of its levee and ditch. R. S. 1899, sections 8443-4; Harris v. Co., 49 Cal. 662; Walker v. Dist., 6 Mackey, 352; Hinkel v. Mattoon, 170 Ill. 316; Brophy v. Laudman, 28 Ohio St. 542; Cuming v. Grand Rapids, 9 N. W. 141. (2) Injunction is the proper remedy in cases like this. R. S. 1909, sec. 2534; Fitzpatrick v. Milk, 24 Mo. App. 435; Harber v. Evans, 101 Mo. 661; Hayden v. Tucker, 37 Mo. 215; Paddock v. Somes,

102 Mo. 226; Bank v. Kennett, 101 Mo. App. 370; Keig-win v. Coms, 115 Ill. 347; Springer v. Walters, 139 Ill. 419; Woodruff v. Fisher, 17 Barb. 224; Caufield v. Smith, 34 Wis. 381. (3) Where public officers are proceeding illegally under claim of right, they may be enjoined. Touzalin v. Omaha, 25 Neb. 817; Johnson v. Hahn, 4 Neb. 139; Belknap v. Belknap, 2 Johnson Ch. 472; Livingston v. Livingston, 10 Am. Dec. 353.

*Ward & Collins* and *George A. Burr* for respondents.

(1) Levee district number 4 is a municipal corporation and its organization cannot be collaterally assailed nor even inquired into at the suit of an individual. Barnes v. Missouri Valley Const. Co., 165 S. W. 723; State ex rel. Coleman v. Blair, 245 Mo. 680; State v. Fuller, 96 Mo. 165; Catholic Church v. Tobbein, 82 Mo. 418; Burnham v. Rogers, 167 Mo. 17; School District v. Hodgin, 180 Mo. 70-78. (2) Levee district number 4 cannot be held liable either in damages or injunction, for the legal and proper exercise of a power conferred by law, even though individuals may sustain injuries thereby, unless made so by statute. The Northern Transportation Co. of Ohio v. Chicago, 99 U. S. 635, 25 L. Ed. 336; 20 Am. & Eng. Ency. (2 Ed.), 1192; Funke v. St. Louis, 122 Mo. 132. (3) The landholders' notice cannot be attacked collaterally. State v. Coles, 151 S. W. 195; State v. Blair, 245 Mo. 680. (4) Due and legal notice of landholders' meeting was given. All landholders were present in person or by proxy and participated in the election. State v. Taylor, 224 Mo. 393.

STATEMENT: This is a suit to restrain the defendant, levee district, from constructing a levee along the east bank of the St. Francis river in the south part of Dunklin county, Missouri, in the manner and at the

location fixed in organizing such district. The defendant district is organized under the provisions of article 10, of chapter 41, Revised Statutes 1909, being sections 5714 to 5763. The levee being constructed by the defendant was located in the manner provided by said article. Plaintiff's claim is that the construction of the levee, and particularly the upper or northern portion thereof, will cause its lands to be overflowed and inundated. Plaintiff's lands are not in levee district number 4 but are in levee district number 25, the levee of which is also being constructed along the east bank of St. Francis river in said county but further north and upstream from district number 4. Levee district number 25 is the next levee district upstream from levee district number 4. The river runs substantially north and south. The accompanying plat will show the location of plaintiff's lands with reference to the St. Francis river and the two proposed levees, number 4 and number 25. The levees are marked by broken lines and plaintiff's land is shaded and called "Laswell lands" because of a former owner. Levee number 25 extends from "D" to "A." Levee number 4 extends from "B" to "C.'

MAP OF DUNKLIN COUNTY

It will be seen from this plat that plaintiff's lands, 3800 acres, lie in the low bottoms of Varner and St. Francis rivers where the same join and these lands are subject to almost constant overflow in the absence of any levee. Varner river is more in the nature of a slough or bayou and is mostly formed by overflow water from the St. Francis river. Levee number 25 is being built across the source of Varner river or bayou where it leaves the St. Francis river and will dam up such source. It will be noticed that levee number 4 does not cross the mouth of Varner river near point "A," but leaves St. Francis river and follows the east bank of Varner river a distance of four or five miles. Levee district number 4 was established some two years before levee district number 25 and its levee was not, therefore, located with a view to connecting with levee number 25, which was not yet proposed, but was so constructed to prevent the waters of Varner river, as well as of the St. Francis river, from overflowing the lands in district number 4. In locating the levee of number 25, it crosses a large part of the wide low bottoms made at the mouth of Varner river but does not extend far enough to connect with levee number 4, or to prevent the backwaters from the St. Francis river overflowing the lowlands of plaintiff. There is a space of about one thousand feet at point "A" on the plat, shown by the heavy black line, which is not closed by either levee. What plaintiff really wants is to compel the defendant to so change its levee as to follow St. Francis river as shown by the heavy black line and to thus close up this vacant space instead of deflecting the same up the east bank of Varner river.

## OPINION.

STURGIS, J.—The plaintiff, although alleging that the defendant "is a body corporate organized and existing under and by virtue of the laws of the State

of Missouri," attacks its corporate existence and right
to construct this levee because it was not "organized
according to law." The specific objection is that the
notice required by section 5728, Revised Statutes 1909,
in calling a meeting of the landowners to vote on the
question of doing the work according to the plans and
estimates made by the engineer and assessor was not
published as required by that section. From a read-
ing of the method of organizing such corporations by
the county courts, it appears to us that the corporate
existence of the defendant is in nowise dependent on
the regularity of this notice or the method of voting
or conducting this meeting. The corporation was al-
ready formed before this landowners meeting was
called and was merely exercising its corporate powers
in calling and holding such meeting. The failure to
give notice required might affect the power of the
corporation to levy and collect the taxes from the land-
owners in the district and such question might be raised
in a suit to collect such taxes, or even to enjoin the
doing of the work, by an interested landowner; but
that is not before us for decision. We do hold, how-
ever, that one who is not a taxpayer in the defendant
district cannot attack the legality of its organization
or its corporate existence in this purely collateral ac-
tion. In a suit to collect drainage taxes, the court, in
State ex rel. v. Blair, 245 Mo. 680, 687, 151 S. W. 148,
held that a collateral attack could not thus be made
on the organization or corporate existence of a simi-
lar corporation formed under article 4, of chapter 41,
Revised Statutes 1909, by alleging the unconstitution-
ality of section 5581, Revised Statutes 1909, or the fail-
ure to give the notice thereby required and said: "De-
fendant also asserts that the notice issued under said
last-named section was irregular and insufficient in
both form and substance. Neither of the issues thus
tendered can avail defendant in this action, because a
drainage district is a public corporation, and the legal-

ity of its organization and the sufficiency of its corporate existence cannot be inquired into in this collateral action. [State v. Fuller, 96 Mo. 165; Catholic Church v. Tobbein, 82 Mo. 418; Burnham v. Rogers, 167 Mo. 17; School District v. Hodgin, 180 Mo. 70.]" The notice there spoken of, however, is a notice similar to that required by section 5716, Revised Statutes 1909, of the chapter now in question, and relates to the formation of the corporation, which the notice required by section 5728, Revised Statutes 1909, does not. It is generally held that the legality of the organization of a public corporation cannot be collaterally assailed. [Barnes v. Missouri Valley Const. Co., 257 Mo. 175, 165 S. W. 723, 726, and cases there cited.] That these levee districts are public corporations is declared by statute, section 5714, Revised Statutes 1909. [State ex rel. v. Taylor, 224 Mo. 393, 469, 123 S. W. 892.] We need not, therefore, inquire further as to the sufficiency of the publication of the notice in question, although we think its publication was sufficient. And, it is also shown to be true in this case, as stated in State ex rel. v. Taylor, supra, that "this record shows that all of them (landowners) were actually in court in some form or other and participated at one stage or another in the proceedings."

A few observations will suffice to justify the action of the trial judge in refusing to grant this injunction. A study of the physical facts disclosed by the plat will demonstrate this. The only relief at all justifiable would be to restrain the defendant from constructing that part of the levee deflecting along the Varner river above point "A." That would not close up the gap between the two levees and we do not see how plaintiff would be much, if any, benefited. The court was not asked to compel the defendant to close up this gap by building its levee along the St. Francis river to connect with that of levee number 25. It would seem that if either district could be compelled to do this, a

point we do not decide, then, as district number 4 was the first to organize and locate its levee, number 25 is more properly the one which ought to do this. It is also shown that these two districts have adopted different methods of constructing levees, one of them making the embankment on the land side and the other on the river side of the excavation. There is no evidence as to which is the better. Defendant claims in argument that its method is far superior, but the point is that the two levees when constructed in these different manners cannot be joined without completely obstructing the excavated ditch carrying a large amount of surface and overflow water and causing same to be dumped on plaintiff's and other lands. Again, we think that other things being equal, the district last organized, if either, should be made to conform to the prior one in the method of constructing the levee.

It is conceded that plaintiff's lands are swampy and largely covered with water in the absence of any levee. It is uncertain to what extent the building of both these levees, as proposed, will aggravate this evil. As plaintiff's witness said, it does not make much difference whether the land is "six inches wet or six feet." It is shown, that because levees are built on the Arkansas side of the St. Francis river also, the effect is to confine the waters to a channel and this raises the same two or three feet in high water. This would cause the waters to back up through the break in the levees to a greater extent. But, it is a matter of grave doubt as to what effect defendant's levee has on this condition. The gathering together of the waters and casting same into this opening and onto plaintiff's flat lowlands in greater volumes is due to levee number 25. Perhaps that part of defendant's levee along the Varner river aggravates this condition by not allowing the waters to spread out more, but it could do but

little damage in this respect without levee number 25 being built.

Plaintiff bought this land after levee number 4 was located, but we have not given this fact much weight. Water must run somewhere and one who buys lands which are practically the bed of an overflow river cannot always demand that in draining lands more favorably situated the drainage system should be so constructed as to drain his lands equally with others more favorably situated. These drainage districts being public corporations, authorized by law to do this character of work and formed partly at least under the police power of the State and to promote the public welfare, must be given some discretion at least as to the method employed to accomplish their work. The courts go slow in administering their affairs or controlling the methods adopted in doing their work. What rights plaintiff may have in another action we do not say. There is a class of remote and consequential damages to property flowing from making public improvements which are regarded as *dammum absque injuria*. [Funke v. St. Louis, 122 Mo. 132, 26 S. W. 1034; Vam De Vere v. Kansas City, 107 Mo. 83, 17 S. W. 695; Northern Trans. Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; 20 Am. & Eng. Ency. of Law (2 Ed.), 1192, 1193.] It is sufficient in this case to hold that the injunction asked should not be granted.

The judgment of the trial court will, therefore, be affirmed.

*Robertson, P. J.*, and *Farrington, J.*, concur.