STATE OF MISSOURI EX REL., STATE HIGHWAY COMMISSION (PLAINTIFF), APPELLANT, v. BLOBECK INVESTMENT COMPANY, A CORPORATION, DEFENDANT, HENRY J. KRUEGER, JR., AND ELIZABETH KRUEGER (DEFENDANTS), RESPONDENTS.—110 S. W. (2d) 860.

St. Louis Court of Appeals. Opinion filed December 7, 1937.

*Louis V. Stigall* and *Wilkie C. Cunnyngham* for appellant.

*A. E. L. Gardner* for respondents.

BENNICK, C.—This case, which comes to the writer on reassignment, arises out of a condemnation suit which was brought at the relation of the State Highway Commission in connection with the construction of State Highway No. 66 in St. Louis County along the general route of what was formerly known as the Watson Road.

Among the landowners affected by the condemnation were defendants, Henry J. Krueger, Jr., and Elizabeth Krueger, his wife, who were the owners of a tract of approximately 30 acres of land

situated at the northwest corner of the intersection of the Watson Road with the Laclede Station Road. The land actually taken for the improvement was a narrow strip running the full width of defendants' property abutting on Watson Road, and comprising in its entirety 1.28 acres. However the issue respecting the amount of defendants' compensation was not limited to the determination of the value of the land actually taken, but was extended as well to the question of the damage, if any, which was done to the remainder of the tract of which the land taken was a part, from the total of which there was of course to be deducted the value of the special benefits, if any, accruing in consequence of the making of the improvement.

The commissioners who were appointed by the court assessed defendants' damages at the sum of $4,500. Defendants for their part were seemingly content with the commissioners' report, but not so with the State Highway Commission, which filed its exceptions asking that a new appraisement of the damages be made by a jury under the supervision of the court as is provided by law in ordinary cases of inquiry of damages.

Thereupon a trial was had to a jury, resulting in the return of a verdict assessing defendants' damages at the sum of $7,125. Judgment was rendered accordingly, and the State Highway Commission's appeal to this court has followed in the usual course.

The chief controversy in the case goes to the question of whether reversible error was committed by the court in allowing evidence to be introduced on behalf of defendants respecting certain uses which the adjoining landowners had made of their own properties after the completion of the improvement, and which, because such uses were shown to have been of a character calculated to bring about a diminution in the reasonable market value of defendants' property, were looked upon by defendants as consequential damages for which they were entitled to be compensated.

At the opening of the trial, which was had on October 17, 1935, it was agreed between counsel for the respective parties that the question of defendants' damages should be determined as of August 28, 1930, that being the date of the commissioners' report. In fixing such date counsel were of course having due regard for the fact that in a condemnation proceeding the question of damages and benefits is to be determined with reference, not to the time of the trial, but to the time of the appropriation. [State ex rel. v. Day, 226 Mo. App. 884, 47 S. W. (2d) 147; State ex rel. v. Baumhoff (Mo. App.), 93 S. W. (2d) 104.]

Near the outset of the trial, which, it will be recalled, was not had until more than five years after the appropriation, defendants showed by one of their witnesses that both on the northeast and southwest corners of the intersection of Watson Road with the Laclede Station Road, immediately opposite defendants' property, filling stations had

been erected, and that further improvements were being made in the way of laying concrete around the same.

Counsel for the Highway Commission, apparently not realizing at that initial stage of the case that defendants were laying the basis for their proof of damages, objected to any inquiry relative to the frontage of such filling stations upon Watson Road, but put his objection upon the general ground that such question was immaterial to any issue involved in the case on trial.

Defendants' counsel thereupon interposed to state that his purpose was "to show the situation around there, and what has developed since this improvement has been put in," to which counsel for the Highway Commission answered: "The State would not be responsible for any use another man made of his land over there. He might even put a nuisance on it, but that would not subject the State to damages for that; and if it was any other use we would not be responsible for that."

It appears, incidentally, that the court for its part had not yet caught the full significance of the matter, as was evidenced by the court's statement: "Of course, I do not know the purpose of showing the use."

At that juncture defendants' counsel proceeded to elaborate at length upon his theory of the admissibility of such evidence by arguing that he was entitled to show that the construction of the highway had "changed the entire character of the neighborhood" by inviting, or at least by making possible, the building of filling stations and tourist cabins in the immediate vicinity of defendants' property, all of which had served to cause the property to depreciate in value.

In reply, counsel for the Highway Commission argued that even though the uses to which the adjoining landowners had subjected their properties after the completion of the improvement had brought about a decrease in the value of defendants' property, such damage was nevertheless common to the neighborhood and therefore not special to defendants, but that whether such uses had proved to be advantageous or disadvantageous to defendants, the matter was in any event one over which the state had had no control, so that neither were the advantages to defendants, if any, to be set off by the state as benefits, nor, by the same token, were any disadvantages to defendants to be urged by them as consequential damages.

At the conclusion of the argument of counsel the court's ruling was that defendants might show the general use to which the ground had been put since the construction of the highway, and when counsel for the Highway Commission again suggested at a somewhat later stage of the case that such evidence should not be allowed to bear upon the question of damages, the court overruled his objection to its admissibility with the statement that "it is in for all purposes."

Thereupon defendants went on to show by numerous witnesses that following the completion of the improvement, which had naturally caused many more people to travel the road than formerly, not only had the two filling stations already referred to been erected on two of the corners of the intersection, but also that a lunchroom or tavern, which kept open all night, had been opened on the southeast corner, and that at the very time of the trial a tourist camp was under construction adjacent to the filling station located on the southwest corner. And not only did defendants show the change that had occurred in the character of the neighborhood over a period of years as a consequence of the relocation and paving of the highway, but they were also allowed to show that the effect of such change had been to decrease the value of their property, both as a home for themselves, and also for the chief purpose for which it was otherwise adapted, which was as a subdivision for residential purposes.

We think that all such evidence was inadmissible, and certainly so as the basis for an award of consequential damages.

It is to be borne in mind as a fundamental proposition of law that to warrant a recovery by a landowner for damages arising from the exercise of the right of eminent domain, there must always be shown, either a physical interference by the condemnor with the property itself, or else a disturbance by him of some valuable right which the landowner has to the legal and proper use of his property, which disturbance must of course directly and specially affect the landowner to his injury. [Funke v. City of St. Louis, 122 Mo. 132, 139, 26 S. W. 1034; Van De Vere v. Kansas City, 107 Mo. 83, 90, 17 S. W. 695; Union Elevator Co. v. Kansas City S. B. R. Co., 135 Mo. 353, 368, 36 S. W. 1071; 20 C. J. 674, 675.]

In this case it may well be that defendants' property was caused to depreciate in value by reason of the subsequent construction of the filling stations, tavern, and tourist cabins in close proximity to it, but even so, it does not follow that such matters were proper elements of damage for the jury to consider in fixing the amount of compensation that defendants were justly entitled to recover in this proceeding. This for the simple reason that all such uses, however, much they may have affected the value of defendants' property, were nevertheless uses which the respective owners had the lawful right to make of their several properties and for which the Highway Commission was in no way responsible. [City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 110, 40 S. W. (2d) 661, 664.]

In other words, whatever damage defendants may have ultimately sustained from the things of which they complain did not result as the direct, natural, and special consequence of the function or use of the improvement itself, but followed only indirectly and generally as the result of a change in the character of the neighborhood oc-

curring long after the time of the appropriation, which change was not only merely incidental to the construction of the improvement, but came about only because the adjoining landowners thereafter voluntarily elected to do certain things with their own properties which they had the right to do and with respect to which the Highway Commission had no connection or control. It is consequently apparent that under such circumstances defendants could have no basis for attributing their resulting damage to an interference by the Highway Commission with any lawful right which they possessed as an incident to their ownership of the property affected by the improvement, and the evidence in question was therefore incompetent as urged by counsel in interposing his objection to it.

The fact is that defendants are no longer insisting upon the competency of the testimony in question, but are rather contending that the Highway Commission is now in no position to urge that its admission in evidence was error, for the reasons that counsel for the Commission failed to make proper and timely objection to it; that the Commission itself subsequently introduced the same character of evidence; that counsel for both parties joined in arguing the matters complained of to the jury; and that the court's instructions, by implication, excluded the evidence in question from the consideration of the jury.

We think that all such suggestions are clearly unavailing.

As to the claim of want of a timely objection on the part of counsel for the Commission, the record shows that there had been but a casual reference by defendants' second witness to the fact that filling stations had been erected on two of the corners of the intersection before the objection to such evidence was interposed by counsel. Certainly the objection was made at the first moment that defendants' purpose in pursuing the inquiry was disclosed, which necessarily means that the objection came in timely fashion. What the objection went to was the right of defendants to show the changed character of the neighborhood as a basis for claiming consequential damage to their own property, and no specific objection to the competency of such evidence could have reasonably been made until after the theory of defendants had been developed to the point of making the significance of their inquiry apparent. [State ex rel. v. Young, 324 Mo. 277, 286, 23 S. W. (2d) 130, 133.]

Nor is it of any avail to defendants that the Commission subsequently introduced evidence of a character to rebut that for defendants which is now being complained of. This for the reason that where a party is forced by an adverse ruling of the court to meet an issue which he should not be compelled to meet, the fact that he thereupon adduces countervailing evidence upon such issue does not preclude him from thereafter insisting on his appeal that the original ruling of the court was wrong. [Bailey v. Kansas City, 189 Mo.

503, 513, 87 S. W. 1182; Davenport v. Silvey, 265 Mo. 543, 551, 178 S. W. 168; McKee v. Rudd, 222 Mo. 344, 371, 121 S. W. 312.]

Similarly there was no waiver on counsel's part by joining the defendants' counsel in arguing the issue in question to the jury. The court's error had not been invited by him; he had yielded under protest to it; and he consequently waived no right of subsequent complaint by accepting the issue which the court had forced upon him, and by attempting, as best he might, to protect the interests of his client in the situation with which he found himself unwillingly confronted.

So far as concerns the instructions to the jury, they were merely the usual instructions having to do with the question of damages and special benefits as involved in a case of this character, and were in no sense intended to withdraw, nor did they have the effect of withdrawing, any of the evidence in the case from the consideration of the jury. Indeed it is quite evident that defendants' counsel, at the time of the trial, did not entertain his present view that the instructions had taken the evidence in question out of the case, else he would not have chiefly based his argument upon such evidence as having constituted the basis for an assessment of consequential damages within the purview of the instructions.

It follows that for the error noted the judgment rendered by the circuit court should be reversed and the cause remanded, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly, reversed and the cause remanded. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.