EDNA M. PETERS et al. v. THOMAS B. BUCKNER, Judge of Circuit Court, et al.

THE STATE ex rel. MEADOW PARK LAND COMPANY v. THOMAS B. BUCKNER, Judge of Circuit Court.

In Banc, July 8, 1921.

1. **EASEMENT**: Restrictions in Deed: Appropriation to Public Use. Restrictions in deeds of conveyance by which the grantees covenant that the lands are to be used only for residential purposes

give to them easements in all lots sold under similar conditions, and such easement is property, is valuable, and cannot be taken for a public use without the payment of a just compensation.

2. ——: ——: **Appropriation to School Uses.** Where an addition a half mile long and a quarter of a mile wide was platted by the owner and lots therein were conveyed to purchasers by deeds in which each grantee agreed for himself and all persons claiming under him that no building should be erected on said lot other than a residence and that said lot should be used only for residence purposes, such restriction gave to each grantee an easement in all the other lots of the addition conveyed by deeds containing a similar covenant, and the public school board, which seeks to condemn for school purposes two blocks in the midst of the addition, must pay to the owner of a lot adjoining the blocks so appropriated a just compensation for the value of such easement to such lot, before it can take possession of the blocks to be used for a school house site.

3. ——: ——: ——: **Prohibition: Remedy Against Instruction to Assess No Damage.** Where the trial court has instructed the commissioners appointed in a condemnation proceeding, to allow no damage to the owner of an easement in a lot which has been injured and damaged by the appropriation of other lots to a public use, such instruction is in excess of the court's jurisdiction, and not mere error, and such owner is entitled to a writ of prohibition to prevent such trial judge from enforcing such instruction. Such easement is property, and the Constitution says that no property can be taken or damaged for a public use without the payment, in advance, of its value if appropriated, or the damage thereto if injured, and the trial court in instructing the commissioners (who are the arms of the court) that they are to allow no damage for such injury violates this constitutional right, and therefore exceeds its jurisdiction. [Per GRAVES, J., concurring.]

## Prohibition; Mandamus.

BOTH WRITS MADE PERMANENT.

*Scarritt, Jones, Seddon & North* for plaintiffs.

(1) The covenants and agreements in the deeds from and between the Meadow Park Land Company and its grantees, who are owners of lots in the addition outside of the proposed schoolhouse site (including plain-

tiffs Peters), create and vest in each of them as owners a property right, an easement in and to each and every lot within the schoolhouse site, which is an appurtenance to their respective lots. Jones on Easements (Original Ed.), secs. 1, 5, 105, 106, 111, 112, 113, 116; Coughlin v. Barker, 46 Mo. App. 54; Meriwether v. Joy, 85 Mo. App. 634; Doerr v. Cobbs, 146 Mo. App. 342. (2) The easement appurtenant to the plaintiffs' several lots outside of the site respectively, in and upon the lots within the site, is a property right which is protected by both State and Federal Constitutions restricting and limiting the State's right of eminent domain to the extent that the "property [of the owner] shall not be disturbed or the proprietary rights of the owner therein divested until the same [i. e. just compensation] shall be paid to the owner or into court for the owner." Bridgewater v. Ocean City Railroad, 62 N. J. Eq. 276; Schickhous v. Sanford, 83 N. J. Eq. 454; King v. Union Trust Co., 226 Mo. 351; Bolin v. Inv. Co., 273 Mo. 257 (Opinion by BROWN, C., criticised, but not overruled in this respect); Randolph on Eminent Domain (Ed. 1894), p. 72, sec. 79; 1 Nichols on Eminent Domain (2 Ed. 1917), secs. 121, 346, 348, 235, 719; Allen v. City of Detroit, 167 Mich. 464; Allen v. Murfin, 159 Mich. 613; Kirby v. School Board, 1 Ch. 437; Arnold v. Hudson Railroad, 55 N. Y. 661; Story v. N. Y. Ry. Co., 90 N. Y. 122, 43 Am. Rep. 146; Ladd v. City of Boston, 151 Mass. 585; City of Chicago v. Ward, 169 Ill. 392; United States v. Illinois Central Railroad, 154 U. S. 225, 38 L. Ed. 971; United States v. Welch, 217 U. S. 333, 54 L. Ed. 787. (3) These covenants run with the land because both the liability for their performance and the right to enforce them passes to the assignee of the land itself. Hisey v. Presbyterian Church, 130 Mo. App. 556; Miller v. Klein, 177 Mo. App. 557. (4) The consent of all the owners of a restricted subdivision is necessary to change the restrictive covenants. Spahr v. Cape, 143 Mo. App. 114. (5) Money

damages are allowed for the breach of such covenants, even though injunctive relief is prayed for, in the event the restrictive period has expired before the trial of the suit. Sanders v. Dixon, 114 Mo. App. 229. (6) Viewed as mere contracts these covenants are property which is within the constitutional guaranties. State v. Julow, 129 Mo. 163; State v. Tie & Timber Co., 181 Mo. 559; Water Co. v. Brooklyn, 166 U. S. 690; New Orleans Light Co. v. Light & Heat Co., 115 U. S. 650. (7) Prohibition and mandamus respectively are proper and appropriate remedies here for the trial court in disregarding and denying the plaintiff's specific constitutional remedies exceeded its jurisdiction. Mo. Constitution, art. 2, secs. 10 and 21; Sec. 11428, R. S. 1919; Art. 2, ch. 13, 2 R. S. 1919; R. S. 1919, sec. 1793; State ex rel. v. Scarritt, 128 Mo. 331; State ex rel. v. Riley, 203 Mo. 175; State ex rel. v. Rombauer, 105 Mo. 103; State ex rel. v. Neville, 157 Mo. 386; State v. Elkin, 130 Mo. 109; State ex rel. v. Eby, 170 Mo. 526; State ex rel. v. Denton, 128 Mo. App. 314; State ex rel. v. Burney, 193 Mo. App. 336; State ex rel. v. Board of Trustees, 268 Mo. 168; State ex rel. v. Holtcamp, 266 Mo. 372.

*Sanford B. Ladd* for defendants.

(1) The writ of prohibition ought not to issue. Rothan v. Railroad, 113 Mo. 142; Railroad v. Inv. Co., 205 Mo. 174; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. v. Ry. Co., 100 Mo. 59; State ex rel. v. Withrow, 108 Mo. 8; State ex rel. v. Scarritt, 128 Mo. 331; Delaney v. Police Court, 167 Mo. 679; State ex rel. v. Riley, 203 Mo. 192; State ex rel. v. Thomas, 278 Mo. 98. (2) The writ of mandamus ought not to issue. Rothan v. Railroad, 113 Mo. 142; Railroad v. Inv. Co., 205 Mo. 174; Williams v. Judge of Cooper Court, 27 Mo. 227; Miltenberger v. St. Louis County Court, 50 Mo. 172; State ex rel. v. Smith, 105 Mo. 9;

State ex rel. v. Neville, 110 Mo. 349; State ex rel. v. Mc-
Kee, 150 Mo. 243; State ex rel. v. Neville, 157 Mo. 394;
State ex rel. v. Fort, 180 Mo. 108; State ex rel. v. West,
272 Mo. 313. (3) There was no error in the instruction
given by Judge Buckner to the commissioners; it em-
braced a correct view of the law of this State. Van De
Vere v. Kansas City, 107 Mo. 83; Glasgow v. St. Louis,
107 Mo. 204; Funke v. St. Louis, 122 Mo. 138; United
States v. Certain Lands, 112 Fed. 622; Doan v. Cleve-
land Railroad, 92 Ohio St. 461; Frazer v. City of Chi-
cago, 186 Ill. 480; Bacon v. Walker, 77 Ga. 336; Long
v. City of Elberton, 109 Ga. 28; Lewis on Eminent Do-
main (3 Ed.), sec. 366; Dillon on Mun. Corp. (5th Ed.)
sec. 1018.

WOODSON, J.—These two cases were argued and
submitted to this court as one case, and for that rea-
son we will write the opinion as though only one case
were here. The facts are undisputed, as shown by state-
ments of counsel, and are as follows:

The controlling facts and the applicable legal prin-
ciples in these two cases being so nearly identical, it
appears to us that by considering them together as
practically one case the time and labors of the court,
as well as of counsel, will be conserved, and according-
ly we shall do so.

The object and purpose of each of these suits is to
control the judicial conduct of Judge Buckner of our
Jackson Circuit Court and of his condemnation com-
missioners, whom he appointed to assess damages ac-
cruing to property owners in a certain condemnation
case to the extent of requiring them to consider of and
determine the amount of plaintiffs' damage by reason
of the taking of their property for public use.

The plaintiff in the condemnation case is the School
District of Kansas City, and the defendants, among whom
are the plaintiffs at bar, are all of the owners of lots in
Meadow Park Addition in that city, and the School Dis-

trict is seeking to condemn and appropriate Blocks 3 and 4 in that addition for public use as a schoolhouse site. The addition was platted in January, 1910, and is half a mile long east and west, and one-fourth of a mile wide north and south, and Meyer Boulevard, one of the prominent boulevards of the city, it being one hundred and forty feet in width and about two and a half miles long, runs east and west through the middle of the addition, and into Swope Park at its easterly terminus. The proposed schoolhouse site, Blocks 3 and 4, comprise a tract of about ten acres which fronts south on the Meyer Boulevard and east on the Morning Side Drive Boulevard, and occupies the most elevated, commanding and beautiful location in the entire addition, and indeed of the entire neighborhood. Each and every lot in that addition is impressed with a certain use, with an easement, or more specifically, a negative easement, which was created and is evidenced by certain "restrictions and agreements," contained in the title deeds of each and every lot-holder, except those lots not yet sold but now owned by the original owner, Meadow Park Land Company; that company is the common source of title, and it established and promulgated the plan and purpose of these restrictive covenants and agreed with all purchasers in the addition and owners of adjacent land to embody the same covenants in the title to every lot in the addition, except a slight area, which is not material here; and both express and implied covenants and restrictions exist between it (the Meadow Park Land Company) and each and all the purchasers and grantees of it of lots in said addition, and also by an express contract between it and the owners of adjacent lands, to the effect that the same covenants and restrictions herein set out shall be incorporated in the title and enforced as to each and every lot in said Meadow Park Addition, whether they be owned by it, the Meadow Park Land Company, or its grantees. And as to this, the express language of the answer of the Meadow Park Land Company in the said

condemnation case, which allegations are set out in the petitions for these writs and are therefore admitted by the defendants in the case at bar by reason of their demurrers to the petitions for these writs, is to this effect:

"Defendant further says that on or about January, 1910, it entered into a written agreement with the owners of the eighty acre tract of land lying immediately south of and adjoining the eighty acre tract comprising Meadow Park Addition, whereby it was mutually covenanted and agreed between them that each of said tracts should be restricted to residence uses by *covenants and restrictions* substantially like those set out in the petition for a term of twenty-five years from January 1, 1910; and this defendant (Meadow Park Land Company) says that at all times since the platting of said Meadow Park Addition it has represented and advertised to all purchasers and to the public in general that all of the lots and tracts of land in said Meadow Park Addition will be used and devoted to residence purposes, and will be conveyed and held subject to the covenants and restrictions set out in the petition (the condemnation petition) herein.

"Defendant says that by reason of the character the property, comprising the lands in Meadow Park Addition, has acquired by reason of the fixed purpose and policy of the owners of that and surrounding lands to devote it to residential uses in accordance with the covenants and restrictions herein referred to, it has acquired a great and substantial value and that such value will be greatly depreciated and lessened by the taking and appropriation and use of Blocks 3 and 4 in said addition as and for a site for a school-house in accordance with the petition herein.

The exact terms of the restrictive covenants are as here set out; and there is no dispute about them, for they are recited in the condemnation petition and in each of the petitions for these writs, and consequently are admitted by all parties, and they are embodied in each and

every deed from the Meadow Park Land Company to its grantees, the Peters as well as every other lot-owning defendant in the condemnation case, immediately following the granting clause in such deeds, and they are as follows:

"Restrictions and Agreements.

"Subject however to the following *restrictions and agreements*: And the second party, grantee herein, for himself and for all persons claiming under him, her or them *agrees* as follows, viz:

"First: That no building shall be erected on said lot other than a residence and usual appurtenant outbuilding for use in connection with said residence, and that said lot shall be used only for residence purposes. Further, that no flat building or apartment building shall be erected upon said property. Said lot shall not be sold to or occupied by negroes.

"Second: That only one residence shall be erected or re-built in case of destruction and maintained on said lot. That no residence shall be erected thereon which shall cost and be reasonably worth less than $3500.

"Third: That at no point shall any part of such residence building (inclusive of porches) be nearer than 25 feet of the front street line of said lot, and no stable, barn or other outbuildings shall be erected on said lot elsewhere than on the rear thereof, and if a corner lot, nearest to the side line fartherest from the lateral street.

"Fourth: These restrictions and agreements shall be binding and effective for a term of twenty-five years from January 1, 1910, upon the grantee or grantees herein and all persons claiming under such grantee or grantees, and are made for the use and benefit of the grantor herein and its past or future grantees of other lands in said Meadow Park Addition and all persons claiming under them or any of them, and in case of breach or threatened breach of any restriction or agreement contained, the grantor herein, or any person or persons holding or owning any interest in any other lands in said addition, shall be en-

titled from time to time to sue for and obtain an injunction prohibitive and mandatory or either as may be sued for, to prevent such breach or to enforce the performance and observance of such restrictions and agreements and each of them and to compel and restrict the use of such premises as herein agreed to be restricted and to abate everything thereon or use thereof contrary hereto; in addition to ordinary legal action or actions for damages.''

By virtue of the established residential character of this entire addition and neighborhood brought about and secured by these obligatory covenants all the lots in the addition acquired and enhanced and stable value, and the location and carrying on of a great public school on the proposed site will entirely obliterate that character and destroy the value of adjacent lots as high class residence property to the great damage of these plaintiffs.

It is alleged in these petitions and is therefore admitted under the demurrers thus:

''And these plaintiffs say that the taking and appropriation of the schoolhouse site and the use thereof for that purpose will violate the *agreements and restrictive covenants* between these plaintiffs and the Meadow Park Land Company and other persons parties to the said condemnation suit who now own the building lots within the said site as grantees of the said Meadow Park Land Company hereinbefore recited, and will deprive these plaintiffs of their said right, title, interest and easements in and to the said lots, and each of them comprised within the schoolhouse site, and that thereby the plaintiffs' said lot 7 in Block 5 will be depreciated in value and they will be thereby damaged in a large sum, to-wit, the sum of seven hundred and fifty dollars.''

And the damages in this respect of the Meadow Park Land Company is alleged in the petition for mandamus, and the demurrer admits the truth of that allegation, to be $21,000.

Counsel for plaintiffs correctly state the legal question involved in this language:

"The material and controlling proposition in the condemnation case therefore is substantially this: May the Peters (for instance) who own a fifty-foot lot across the street from the proposed schoolhouse site, and which fronts the proposed site, recover in the condemnation proceeding the amount that their lot is depreciated in value and damaged, if any, by reason of the fact that the condemnation and use of the site for schoolhouse purposes violates the restrictive covenants hereinbefore referred to and terminates the easement which their residence lot as a dominant estate has in each and every lot in the site as a servient estate? If yes, the writs sought in both cases should issue. If no, the writs sought should be denied."

Upon the filing of the amended petition in the condemnation case the defendants Meadow Park Land Company and the Peters (they being the plaintiffs at bar) respectively filed their answers to that amended pleading and thereupon the court heard evidence on all the issues then joined, as specifically shown in the record as follows:

"Thereupon on this day the said cause coming on regularly for hearing, the said School District of Kansas City as plaintiff in said cause introduced evidence tending to prove each and every allegation of the said amended petition, and the defendant Meadow Park Land Company and defendants Edna M. Peters and James W. S. Peters introduced evidence tending to prove each and every allegation of the answers of both of them."

And thereupon the court entered a condemnation order in which the defendant commissioners were named as condemnation commissioners and they were directed to assess the damages which the defendants in the case, owners of lots within the site, would sustain by reason of the taking of their property "for a site for a schoolhouse and the establishment, erection and maintenance of a schoolhouse thereon by the plaintiff; *and also to assess the damages,* if any, which the owner defendants,

owners of lands and lots in said Meadow Park Addition *outside of blocks numbered three and four,* may sustain by reason of the condemnation and appropriation hereby of any *interest or easement* they may possess, . . . by virtue of the *restrictions and agreements* contained in the said deeds from the Meadow Park Land Company hereinbefore referred to. Said commissioners are hereby directed . . . forthwith to return under oath such assessment of damages to the clerk of this court . . . or in court for them, *it shall be lawful* for the plaintiff and upon making *payment of such amount* to defendants to *hold such real estate* so sought to be taken or appropriated for the uses aforesaid."

And thereupon Judge Buckner, at the request of the School District, instructed his commissioners as follows:

"And therefore you will allow to the owners of property not actually taken (i. e. to the Peters) no damages whatsoever. It is only the value of the property actually taken which the School District can be required to pay. It is against the public policy of the State to require the School District to pay to the owners of the property not actually taken any damages to their property which might result to it from the appropriation of the property taken for a site, and the erection and maintenance of a schoolhouse thereon; and this is true notwithstanding such damages may *arise from a violation of restrictions, covenants or agreements* contained in deeds or other instruments conveying or affecting the title to property actually taken, which, if enforced, would prevent the erection and maintenance of a school building upon the property actually taken."

And the petition for mandamus recites the following facts which the demurrers admit to be true, namely:

"The said commissioners since their appointment and qualification have viewed the property and they believe and have so expressly declared that the petitioner's said lots outside of and adjacent to said site are greatly depreciated in value and damaged and that the petitioner

as owner thereof is damaged by reason of the condemnation and appropriation of the schoolhouse site for school purposes and the consequent violation of the agreements and restrictive covenants set up in the condemnation petition herein, and the said commissioners would, except for the action and instructions of the said court as herein alleged, allow, assess and report in favor of this petitioner a large and substantial amount as the petitioner's damage to its said lots lying outside of and adjacent to said site, but that under the said direction and instruction of the said court they cannot and will not do so unless authorized so to do by some higher judicial authority.

"The defendant herein, as judge of the said circuit court and the said division thereof before which the condemnation cause is pending, refuses and has refused and persistently refuses and will refuse in the future, unless otherwise directed by controlling judicial authority, to permit the said commissioners hereinbefore referred to, or any commissioners in the cause, or any jury that may be called therein to consider of, determine, assess, report or find or allow to the petitioner any damage to or for its said lots lying outside of and adjacent to the schoolhouse site, and thereby he as such judge has exceeded his judicial authority; and unless the said judge be required to confine his judicial action in the premises within the well recognized limits of the court's jurisdiction, the petitioner will be deprived of its property and property rights hereinbefore particularly set forth for public use without having just compensation thereof first ascertained and determined and paid or tendered to it as required by the constitutional law hereinbefore specially referred to and now invoked."

It is alleged in the petition for prohibition, and substantially the same in the petition for mandamus and the demurrers therefore admit the facts pleaded, that:

"These plaintiffs have and hold a right, title, interest and easement in and to the lots, and each of them, comprising Blocks 3 and 4 in said Meadow Park Addi-

tion sought to be condemned as aforesaid as appurtenant to and running with the title to their said Lot 7, which constitute property and property rights which the said School District as plaintiff in said condemnation suit intends to and will take and appropriate for public use and under and by virtue of its said suit, and that the Constitution of Missouri, in Section 10 of Article 2 thereof, expressly provides that the courts of justice shall be open to every person, and certain remedy afforded for every injury to property, and that right and justice shall be administered without denial or delay, and Section 21 of the same article provides that private property shall not be taken or damaged for public use without just compensation; and that such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested; and it is provided in the statutes of the State (R. S. 1919, sec. 1793; this is applicable to school districts, Sec. 11428) that the court shall appoint three disinterested commissioners to assess the damages which the owners of property to be taken or damaged may severally sustain by reason of the appropriation, who, after having viewed the property, shall forthwith return under oath such assessment and damages to the clerk of said court, setting forth the amount of the damages the damages allowed each owner shall be stated separately, together with a specific description of the property for which such damages are assessed, and thereupon the clerk shall file such report and the same in the order book of the court; and thereupon the condemning party may pay to the clerk the amount thus assessed for the party in whose favor such damages have been assessed, and *on making such payment* it shall be lawful for the condemning party *to hold the interest* in the property so appropriated for the public use.''

A preliminary rule in prohibition and an alternative writ of mandamus have been issued by this court in these cases respectively, and the defendants in each case have lodged their demurrer to the petition and writ in each case. Generally speaking, the grounds of those demurrers are that the respective petitions and writs do not state facts sufficient to constitute a cause of action or warrant the relief prayed for, and upon the issues so joined these cases are now set down for argument and submission.

I. The covenants and agreements in the deeds from the Meadow Land Company and its grantees, who are owners of lots in the addition mentioned outside of the

Easement. proposed schoolhouse site, create and vest in each of them as owners a legal right of property, an easement in and to each and every lot within the schoolhouse site, which is an appurtenance to their respective lots. This is held in the case of Morrison v. Hess, 231 S. W. 997 decided by Court in Banc, May 24th, 1921, [Coughlin v. Barker, 46 Mo. App. 54.; Meriweather v. Joy, 85 Mo. App. 634; Doerr v. Cobbs, 146 Mo. App. 342.]

II. Under the decisions just mentioned there can be no doubt but what the rights mentioned in Paragraph I of this opinion are property rights, and under the

Just Compensation. Constitution of the United States, the 5th Amendment thereof, and that of the State of Missouri, Section 21 of Article II, called the "Bill of Rights," such property cannot be taken or damaged without just compensation first be paid, and the latter section provides that: "And until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the property rights of the owner therein disturbed." Yet in the face of the express provisions of these constitutional provisions the circuit court is not only proceeding to take plaintiffs' property without first paying them just

compensation therefor, but the record discloses that it is going to take their property without paying them one cent therefor. This the court has no legal authority to do, and for that reason the writ of prohibition should be made permanent, without the defense made by the defendants should be sustained, which will be duly considered in the next paragraph of this opinion. [Bridgewater v. Ocean City Ry. Co., 62 N. J. Eq. 276, 49 Atl. 801; Schickhaus v. Sanford, 83 N. J. Eq. 454, 91 Atl. 878; King v. Union Trust Co., 226 Mo. 351; Bolin v. Inv. Co., 273 Mo. 257, by BROWN, C. (criticized, but not overruled in this respect); Randolph on Eminent Domain, (Ed. 1894), p. 72, sec. 79; 1 Nichols on Eminent Domain (2 Ed.), sec. 121, pp. 346, 348; sec. 235, p. 719; Allen v. City of Detroit, 167 Mich. 464, 133 N. W. 317; Allen v. Murfin, 159 Mich. 612, 124 N. W. 581; Arnold v. Hudson Ry. Co., 55 N. Y. 661; Story v. N. Y. El. Ry. Co., 90 N. Y. 122, 43 Am. Rep. 146; Ladd v. Boston, 151 Mass. 585, 24 N. E. 858; Chicago v. Ward, 169 Ill. 392, 48 N. E. 927; United States v. Illinois C. Railroad Co., 154 U. S. 225, 38 L. Ed. 971; United States v. Welch, 217 U. S. 333, 54 L. Ed. 787.]

III. Counsel for defendants rely upon the following decisions in support of the positions taken by the circuit court, in this case: Van De Vere v. Kansas City, 107 Mo. 83; Glasgow v. St. Louis, 107 Mo. 198, 204; Funke v. St. Louis, 122 Mo. 132, 138-140; United States v. Certain Lands, 112 Fed. 622; Doan v. Cleveland Short Line, 92 Ohio St. 461; Frazer v. City of Chicago, 186 Ill. 480; Bacon v. Walker, 77 Ga. 336; Long v. City of Elberton, 109 Ga. 28; Lewis on Eminent Domain (3 Ed.), sec. 366; Dillon Mun. Corp. (5 Ed.) sec. 1018.

*Other Decisions.*

There is no use of considering all the cases cited by counsel, but we will consider the cases cited from this court. The two first cases were suits by injunction to restrain the city from damaging private property for public use, without first paying just compensation. The

damages in the first case were said to have been caused
by establishing a fire-engine house near the plaintiff's
property, and in the second the damages claimed were
vacating a street near plaintiff's property. In neither
of said cases did the plaintiff's property adjoin the pub-
lic improvement, nor was directly affected by it. In
the third case the attempt was to have commissioners
appointed to assess damages to the plaintiff's property
caused by the sub-division of some adjacent property
and to open certain streets, etc. All of those cases held
that the actions would not lie and that the city was not
liable for the damages mentioned, if any, under the pro-
visions of the Constitution before mentioned.

IV.   The cases just considered seem to be in clear
conflict with the constitutional provisions be-
fore mentioned and with other decisions of
this court and those of the courts of appeals
upon the same subject.

Appropriation
to Public Use.

In the case of Morrison v. Hess, supra, we held that
such rights as are here involved were property rights,
and enjoined Hess from violating the restrictions con-
tained in the deed regarding the character of the build-
ings to be erected in the addition and that, of course,
was upon the theory that each and every lot-owner in
the addition had an easement in and to each and every
other lot therein, to the extent to see that no such build-
ing should be erected in the addition in violation of the
covenant of restriction, and that, of course, was upon
the theory that the easement was an appurtenance to
all the other lots of the addition. And the Court of Ap-
peals has very properly held that any injury a lot-owner
may sustain by reason of the violation of such a cove-
nant of restriction, may recover damages therefor in
the courts of this State. [Sanders v. Dixon, 114 Mo.
App. 229.] While it is true the plaintiffs purchased their
property subject to the restrictions mentioned in the
Meadow Park Land Company's deed which created the
easement mentioned in their favor, which added ma-

terially to the value of their property for residential purposes in so far as private persons were concerned, yet that restriction in no manner militated against the power or authority of the School District to take the property for school purposes, although such taking and use would greatly damage the property for residential purposes. But the paramount idea in the case, *the damage to the property*, must not be lost sight of, and it is wholly immaterial whether that damage is protected by an easement or by the right that an ordinary deed confers upon the purchaser, for in either case he would have the right to use the same for residential purposes, and the damages would be just the same in each case; the easement or restriction is not designed to compensate the purchaser for damages to property covered by its violation, but to absolutely prohibit all persons, except the State, or some sub-division thereof, from committing the injury by erecting a building in violation of the restriction. Of course, if the State should erect an objectionable building upon its property, which would necessarily work injury to other property in that vicinity, it should, under the constitutional provisions mentioned, respond in damages for the injury done, whether done in violation of a restriction or not. To illustrate: Suppose in the case at bar John Jones had a lot equally valuable for residential purposes, situated on the other side of the schoolhouse proposed to be erected, but just outside of the restricted area, and which would be equally damaged for residential purposes by the erection of the same house, could there be any good or sound reason advanced why the one should recover damages for the injury done to his property, and not the other? I apprehend not; especially is that true, when the restriction is not binding on the State or the school district. So this, as I see the proposition, brings us back to the constitutional propositions under consideration; and if appellants' property is not damaged within the

Form of
Action.

meaning of Section 21 of Article 2, as Judge BLACK held in the case of Van De Vere v. Kansas City, 107 Mo. 83, and other similar cases, then I am unable to see in what possible manner the simple change of the form of the action from one for damages to one of condemnation can make the injury sustained fall within that section of the Constitution, especially where both are ultimately sound in damages, in so far as the injury done to the other property is concerned, over and above the value of the property actually taken. And there is no pretense made that there is any liability in this case without it is given by said Section 21 of Article 2 of Constitution, and if it is given by that section, then the form of the action, whether it is one for condemnation or one for damages, can make no possible difference in so far as the injuries here complained of are concerned. The form of the action given by the law creates no right of liability; it only affects the redress for the injury threatened or actually done. If therefore the damages sued for in this case do not fall within Section 21, Article 2 of the Constitution, then it goes without saying that the plaintiffs have no cause of action whatever, as held by Judge BLACK in the Van De Vere case previously mentioned, but if, it is covered by that section then of course that and all similar opinions are erroneous, and the plaintiffs should recover in this action.

In our opinion the cases cited by counsel for the defendants take too narrow a view of the constitutional provisions mentioned, and are unsound in principle and should be no longer adhered to, and they are overruled.

There can be no doubt but what the erection of the schoolhouse on the lots mentioned in this case is, in spirit, a violation of the covenants of restriction mentioned in the deeds of the Meadow Park Addition of Kansas City to the various purchasers of lots therein. While these restrictions are not binding upon the State or the schoolboard, acting under the State's authority

in such condemnation proceedings, but if such restrictions add actual value to all the lots of the addition it should·be protected by the courts of the State, then when the school board undertakes to deprive the owners of those lots of those values, by condemnation proceedings, it should be required to pay for the same, as for all other values it takes from the property owners of the addition by such proceedings, and that, too, before their property can be taken or damaged as before indicated.

In our opinion both writs should be made permanent. It is so ordered. *Elder, J.,* concurs; *Graves, J.,* concurs in separate opinion, in which *James T. Blair, C. J.,* and *Walker* and *David E. Blair, JJ.,* concur; *Higbee, J.,* dissents.

GRAVES, J. (concurring).—I concur in that portion of the opinion which holds that the restrictions in the deeds conveying lots in this addition gave to the parties an easement in all lots sold under similar restrictions. I further concur in the ruling that this property right is of some value, and that it cannot be taken for even a public purpose, without a compensation first being paid, as is required by our State Constitution.

II. I do not concur in that portion of the opinion which overrules the cases of Van De Vere v. Kansas City, 107 Mo. 83; Glasgow v. St. Louis, 107 Mo. l. c. 205; Funke v. Kansas City, 122 Mo. l. c. 138-140. These cases which have been specifically followed up to Gorman v. Railroad and St. Louis, 255 Mo. l. c. 495, announce proper principles of law, in the cases there determined, but they may have but limited application to the case at bar. They were not condemnations cases, but conceding, as I do, that they construe our Constitution as to matters where property *is damaged,* for public purposes, we shall consider them in that light. When we amended the Constitution, in 1875, so as to permit a recovery for property damaged in the taking of other property for public purposes, it became a serious question as to

what meaning should be given to the amended constitutional provision. In Van De Vere's case, supra, this court threshed out the question, and the ruling in that case has never been departed from in any subsequent ruling, and its overruling means the overruling of at least a score of cases since, as will be seen by an examination of the citator.

In Van De Vere's case, 107 Mo. l. c. 91, we, in the discussion of the change made in the original law by the Constitution of 1875, said: "The amendment must be construed and applied in view of the evils which it was designed to remedy. We have seen that before this amendment there were many cases where the *corpus* of the property was not taken, yet rights directly annexed to the property were injured, and that for such consequential damages the property owner had no remedy, because the act was authorized by law. Whether the plaintiff must now, in all cases when claiming that his property has been 'damaged' for public use, show that the injury is one for which he might have maintained an action if the act had not been done by authority of law, we need not say in this case. *What we do say is this, that he must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected.*" The italics are ours.

This opinion included an easement directly connected with the property as within the constitutional provision, and all the line of cases following it do the same thing. This is the doctrine that my brother overrules. It is a fair construction of the Constitution of 1875, and one that has been followed in more than a score of cases, and we do not feel that this line of cases (much longer than our brother cites) should be overruled. They have been consistent throughout, and announce (1) that under the Constitution an easement appurtenant to a property cannot be taken or damaged without compensation being paid, and (2) that if the damages claimed

are the same as those suffered by all others, although different in degree, then such damages were not included in the term "damaged" as used in the Constitution. This has been the rule in the sundry cases from the Van De Vere case in 107 Mo. to the Gorman case in 255 Mo. supra. I do not feel that these cases are wrong, but they do not determine the instant case.

In the first place if, as the principal opinion well rules, the restriction in the deed created an easement, appurtenant to the lot owned by Peters, then the destruction of that easement would entitle Peters to damages even under the rule in Van De Vere's case, and those following it. If on the other hand it be said that the easement was in the other lots sold under similar restrictions, then there would be an easement, a valuable property right, owned by Peters in such lots, and the taking of such lots would amount to a destruction of this right, denominated by the courts an easement. So that it is immaterial in which light you view the matter. My serious trouble in the case has been the question of remedy, and upon this I shall express my views.

III.   A discussion of the prohibition feature will suffice for both cases. It is urged that Judge Buckner has, at most, only erred, in instructing the commissioners appointed by him to assess damages, and that mere matters of error cannot be reached by prohibition or mandamus. This we think is true. But the instruction given to commissioners for the assessment of damages in condemnation proceedings are not on the plane of mere instructions in the trial of a law suit. They could not be, if we keep in mind the Constitution. This branch of the proceeding is not the trial of the case, but it only furnishes the basis for the ultimate trial, should the parties feel aggrieved at the action of the commissioners, which commission is the arm of the court. Suppose I owned forty acres of land which

*Remedy.*

Peters v. Buckner.

was wanted for public purposes. Suppose further the petition shows such ownership to be in me, and the circuit judge said to his commissioners (the arms of the court), You go out and see what you think Graves has been damaged by taking the east twenty acres, but you must not allow him anything for the taking of the west twenty acres, although it is just as valuable. Is such action mere error, or is it an excess of power under the, Constitution, which says that Graves is entitled to have the cash for his land before it is taken? We think the latter. Such court would be going beyond the limits of his power in directing his commission to take half of the land without compensation. It is a new and intricate matter, and must be determined upon the common sense of the situation. Take the instant case. If the report of the commission is approved, and the money paid into court, then the schoolhouse can be built, the easement absolutely destroyed, and no payment into court for the damages done. In other words the petition in the case before Judge Buckner shows that Peters has a valuable easement, and the approval of a report made under this unconstitutional direction takes the property without the deposit of the damages, or the payment of damages. Judge Buckner is in fact, and in law, proceeding to take private property for public use, without even permitting a consideration of damages. This is in excess of the power of any Missouri court, under our Constitution. Whilst the question is a new one, I feel that there is more than mere error involved. I feel that the act of the court in directing (its arm) the commissioners to take private property for public use without first paying therefor, is an act in excess of jurisdiction rather than mere error.

I therefore concur in the result of my brother's opinion, and in those portions thereof first above mentioned. *J. T. Blair, C. J., Walker* and *D. E. Blair, JJ.*, concur in these views.