Robert E. ALBRECHT and Lois Albrecht, his wife, et al., Appellants,

v.

STATE HIGHWAY COMMISSION of Missouri et al., Respondents.

No. 49015.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 14, 1963.

Tenney, Dahman & Smith, Edward H. Tenney, Jr., Joseph J. Howard, St. Louis, for appellants.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondents.

HOLMAN, Commissioner.

The plaintiffs in this case are all owners of lots in "Osage Hills," a subdivision now located in the City of Kirkwood, Missouri. The defendants consist of the State Highway Commission of Missouri and the members of that commission who are made individual defendants. (We will hereafter refer to the highway commission as "defendant.") In this action plaintiffs seek to enjoin defendant from constructing a highway upon certain property it had acquired (both by condemnation and purchase) in Osage Hills subdivision. It is their theory that they have a property right in the nature of a negative easement which was created in the property here involved by an "Indenture of Restrictions" applicable to Osage Hills, which restrictions, they contend would be violated by the construction of the proposed highway. They concede that the defendant may not be prevented from constructing the highway in violation of the restrictions but contend that defendant must first condemn or otherwise acquire the "property right" of each of the approximately 400 lot owners in the subdivision (created by the restrictive agreement) in the land upon which the highway is to be constructed. The cause was submitted to the trial court upon an agreed statement of facts and the court entered a judgment in favor of defendant. Plaintiffs have duly appealed.

Osage Hills subdivision was created by the filing and recording of a plat thereof in 1926. At about the same time a restrictive trust agreement applicable to said subdivision was executed and recorded. It appears to have been the intention of the owners to establish a high-type residential subdivision. In a general way it was laid out so that most of the lots were adjacent to or very near large areas of open ground upon which, shortly thereafter, was established a golf course which has been operated by the Greenbriar Hills Country Club. The land occupied by the country club was owned by Greenbriar Hills Realty Company. However, mere ownership of a lot in the subdivision did not give to the owner any right to membership in the country club or to use the golf course or other club facilities. It was provided in the trust agreement, however, that the "Club Grounds" for a period of 50 years should "not be put to any other than country club or other recreational uses." Other provisions made it clear that there was no obligation upon the owners to make any use of said grounds, but if they were used for any purpose the use was restricted as heretofore specified.

The trust agreement contains detailed provisions and restrictions in regard to the use that may be made of the lots, streets and sidewalks in the subdivision. It also specifies the type of buildings that may be constructed upon the lots. Provision was made for three trustees who were given extensive powers in connection with the operation of the subdivision. Many of these powers were made necessary by the fact that at the time the subdivision was laid out the land was not located within the boundaries of any city. Upon motion of the defendants the present trustees were made third-party defendants in this action.

As indicated, defendant acquired a small number of lots by purchase, and the remainder of the right of way for the proposed highway (through Osage Hills) was over a portion of the "Club Grounds" which was obtained by condemnation. The trustees of the subdivision were made defendants in the condemnation suit but none of the plaintiffs were included as parties therein. The amount of damages awarded by the commissioners was $350,000 and, by stipulation of the parties, all of that amount was paid to Greenbriar Hills Realty Company, the owner of the "Club Grounds."

We have jurisdiction of this appeal because we are asked to construe Article I, § 26 of the Constitution of this state and the Fifth and Fourteenth Amendments to the United States Constitution, and for the further reason that title to real estate is involved. Art. V, § 3, Const. of Missouri, 1945, V.A.M.S.

At the outset of our consideration it should be plainly stated that plaintiffs do not contend that they have acquired by the terms of the trust agreement (or otherwise) any fee simple title or interest in the land here involved or any other estate known to the common law. They do not contend that they have acquired any easement which would entitle them to make any affirmative use of any of said property. Their contention is that by the restrictions contained in the trust agreement each lot owner acquired a negative easement which would entitle him to enforce the restrictions against other lot owners, and in case of an intended violation of the restrictions by the State each lot owner's interest is a "property right" for which he is entitled to just compensation to be assessed in a condemnation proceeding, or, of course, paid by private negotiation and purchase.

In support of their contention plaintiffs rely mainly upon the case of Peters v. Buckner, 288 Mo. 618, 232 S.W. 1024, 17 A.L.R. 543, wherein this court held that where lots in an addition were platted and sold subject to the restriction that they be used for residential purposes only, a school district could not condemn certain lots for the purpose of constructing a school building thereon without compensating the other lot owners for damages resulting from the loss of the negative easement created by the said restrictions. It was the theory of the court that the restriction vested in the owners of all the lots in the addition a property right in the lots sought for the schoolhouse site and that under the applicable provisions of the state and federal constitutions such property right could not be taken or damaged unless just compensation was first paid therefor. The state constitutional provision then in effect was the same (in the respect here applicable) as our present Section 26, Art. I, which states that "private property shall not be taken or damaged for public use without just compensation." The Peters case was followed by this court in the case of Britton v. School Dist. of University City, 328 Mo. 1185, 44 S.W.2d 33, a similar

schoolhouse case, and in a companion case to Britton entitled State ex rel. Britton v. Mulloy, 332 Mo. 1107, 61 S.W.2d 741.

If we were called upon to apply the rule announced in the Peters case in deciding the case at bar it would be necessary, under the contention briefed, to re-examine the soundness of that rule. However, since, as hereinafter appears, we have concluded that the construction of the highway would not violate the restrictions specified in the trust agreement, the Peters case is not applicable to our decision and it is therefore unnecessary for us to re-examine it. In that connection, however, we should perhaps state that while the rule followed in Peters has been said to be the majority rule (Vol. 2, Nichols on Eminent Domain, § 5.73, p. 81), there are a number of well-reasoned cases which hold to the contrary. See Board of Public Instruction v. Town of Bay Harbor Islands (Fla.), 81 So.2d 637, Friesen v. City of Glendale, 209 Cal. 542, 288 P. 1080, Anderson v. Lynch, 188 Ga. 154, 3 S.E.2d 85, 122 A.L.R. 1456, Moses v. Hazen, 63 App.D.C. 104, 69 F.2d 842, and City of Houston v. Wynne (Tex.Civ.App.), 279 S.W. 916.

■ Defendants have briefed the contention that the provisions of the trust agreement, when strictly construed, do not prevent the use of the lots in the subdivision for highway purposes and that the provisions relating to the "Club Grounds" do not grant to the lot owners any right or easement of any kind in and to said lands. In considering that point we should bear in mind that restrictions upon the use of real property, being in derogation of the fee, are not favored, are strictly construed, and doubts in respect thereto are to be resolved in favor of the free use of the property. Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 95 A.L.R. 452; Missouri Province Educational Institute v. Schlecht, 322 Mo. 621, 15 S.W.2d 770.

■ There is no restriction in the trust agreement to the effect that the land can-

not be used for a highway. In regard to the residence lots the only provision that might possibly be applicable here is the following: "E, 4(b). That no residence or building on any residence lot shall be used directly or indirectly for business of any character or for any purpose other than that of an exclusive private residence, except that a physician or dentist residing therein may have his office and practice his profession therein." It will be noted that the quoted restriction did not provide that the lots could not be used for any other than residential purposes as is the case in the agreements relating to many such subdivisions. It did not restrict the use of the *land*, but provided, in effect, that any *building* on the lot should not be used for any purpose other than for a private residence. The defendant does not propose to construct any building on the lots and therefore we must rule that the construction of a highway would not violate the quoted restriction.

■ In support of their contention that the trust agreement would be violated by highway use plaintiffs point to a recital in the instrument which states: "Whereas, the lots shown on said plat are all intended for sites for private residences, only * * *." Recitals, as a general rule, are not strictly any part of the contract, and, while they may be helpful in determining intent, "where the recitals are broader than the contract stipulations, the former will not extend the latter." 17 C.J.S. Contracts § 314, p. 733. We do not find any ambiguity in the provision heretofore quoted and hence the recital may not be used to extend and broaden the restrictions therein specified.

■ In regard to the "Club Grounds" the trust agreement provided "that neither the owners of the lots as such, nor the Trustees as such, shall have any right, title, interest or easement in or to said Club Grounds, and that the sole object of including said Club Grounds in this Indenture is for the purpose of protecting said lots by the setting aside and restricting said Club Grounds to certain uses. Said Club Grounds for and during a period of fifty (50) years from date shall not be put to any other than country club or other recreational uses and purposes and such other uses as may be incidental thereto; provided, however, that this provision is intended as a limitation only and nothing herein contained shall obligate the Corporation or its successor or successors in title to said Club Grounds or any part thereof, to use or maintain any or all of said Club Grounds for such purposes."

Plaintiffs contend that all the lot owners have a negative easement in said land because of the quoted restrictions upon the use thereof. It may be that the use of that land for a highway would be a violation of the restrictive provisions, but, in any event, we are of the opinion that plaintiffs are in no position to recover compensation for the taking thereof by defendant. This, because of the express provision that the lot owners shall have no "right, title, interest or easement in or to said Club Grounds," which provision, of course, would include a negative easement. The constitutional provision heretofore quoted certainly does not require that a person be paid compensation for the taking of private property in which he has no "right, title, interest or easement." We recognize that the restrictive provisions concerning the use of said lands were apparently intended to be for the benefit of the lot owners, but we cannot hold that they had such an interest in the land as would entitle them to compensation in the nature of damages for its taking in view of the express agreement that they had no "right, title, interest or easement" therein.

In summary, we hold that the construction of the proposed highway would not violate any negative easement or similar right that may be vested in the lot owners and therefore plaintiffs are not entitled to compensation for the taking of said land; and that defendant would not violate the applicable provisions of the state or fed-

eral constitutions in failing to condemn or otherwise acquire the alleged interest of plaintiffs in said lands before proceeding to construct said highway.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.