In the Matter of the Proceedings for the Con-
demnation and Taking of Private Proper-
ty in Fee for Public Use as the Site of a
Sewage Treatment Facility and Providing
for the Payment of Just Compensation, all
Under Ordinance of Kansas City, Missouri,
No. 26403, Passed August 4, 1961.

KANSAS CITY, Missouri, a Municipal
Corporation, Respondent,

v.

J. E. STITH and Roxena Stith, Appellants-
Condemnees,

The Chief Freight Lines Company, a Corpo-
ration and the Chief Realty Company, a
Corporation, Appellants-Intervenors.

No. 51855.

Supreme Court of Missouri,
Division No. 2.

Dec. 12, 1966.

194

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Associate City Counselor, Kansas City, for respondent.

Kretsinger & Kretsinger, Kansas City, for appellants.

EAGER, Presiding Judge.

In this case the City of Kansas City filed its proceedings to condemn Lots 2–6, inclusive, Block 11, Woodswether Industrial District; the property is located on the north side of the Central Industrial District and very near the Missouri River. It is located on the north side of Woodswether Road, and is separated by one lot on the east from Liberty Street. The tract is 225 feet east and west by 125 feet north and south. The purpose of the condemnation is to acquire the property in fee simple as a part of the site for Kansas City's sewage treatment facility. Proceeding under the somewhat peculiar provisions of the Kansas City Charter, a certified copy of the Ordinance of Condemnation was filed in the Circuit Court on March 6, 1964; the court entered an order noting the filing, and pub-

lication was duly made. An answer and claim for damages was filed by J. E. Stith, the owner of the tract, in which he claimed $75,000 as its reasonable market value, further alleging generally that any lesser compensation would be a taking of private property for public use without just compensation, in violation of the Fifth Amendment to the United States Constitution and of Article 1, § 26 of the Missouri Constitution, V.A.M.S. Following the trial before a "Freeholders" jury of six, under Section 142, Article VI of the Kansas City Charter, a verdict was returned awarding the owner $40,000, which verdict was confirmed by the court upon the overruling of the after-trial motions.

Before outlining the proceedings involving an attempted intervention, it will clarify the situation to state certain additional facts. Mr. Stith bought the condemned tract in 1953; it was then, and still was at the time of condemnation, improved substantially as follows: a truck terminal building of brick and tile construction, approximately 50 feet by 125 feet with concrete docks, built about 1928 (with some rehabilitation since) and containing also certain "office space"; an attached "garage" building with a high roof, built about 1945, which accommodated tractors and trailers for repair or maintenance; the unoccupied land surface was treated with oil and gravel; the whole area was surrounded by a cyclone fence with appropriate truck gates. The physical condition of the terminal building was described as from "very poor" or "almost beyond economic rehabilitation" (by the City's witness) to a "fair condition" (by defendant's expert); the office space was obviously in poor condition; the garage was newer and was said to be in considerably better condition. Mr. Stith testified that he had contemplated, and indeed had "started" some repairs, but that the condemnation intervened and he stopped.

In 1951, soon after the disastrous flood of that year, the Chief Realty Company, a corporation, bought a tract diagonally

across the intersection of Woodswether Road and Liberty Street, on the southeast corner (omitting consideration of the one lot just west of Mr. Stith's tract). For convenience we shall describe that tract as "Tract A," and the condemned property as "Tract 6," as the latter was described in the Ordinance. Tract A appears to be about three times the size of the condemned property. Chief Realty Company is an affiliate or holding company for the Chief Freight Lines, which is an interstate carrier operating between Kansas City, Dallas and Fort Worth. In 1959 or 1960 a freight terminal, described as "modern," was built on that tract; it was leased to the Freight Lines. Mr. Stith is President of Chief Freight Lines and owns 52% of its stock; he is Secretary-Treasurer of the Realty Company and owns 20% of its stock; neither is a "family" corporation. Tract 6 was used as a truck terminal for the Freight Lines until the new terminal was built on Tract A. It is now used, according to Mr. Stith, for storage of tires and damaged freight, maintenance and repair of equipment, for parking of trucks and trailers, and for "pickup and delivery service." The real gist of the complaint here, by Stith *and* the corporations, is that the new terminal on Tract A is not adequate to take care of these added requirements, that it was built with the understanding that it would be used in connection with Tract 6, and that the operations of the Freight Lines will be severely handicapped by the loss of Tract 6 (which has continued to be used temporarily under a rental agreement with the City).

In this situation the Freight Lines and the Realty Company sought to intervene by motion, with a proposed Joint Answer and Claim for Damages attached; therein they alleged the substance of the facts already related, that the joint use of both tracts was required in the business, and that the new terminal would be rendered unsuitable for the operations of the Freight Lines by the taking of Tract 6, to the damage of the Realty Company in the sum of $400,000, and of the Freight Lines in the remaining amounts due under its lease on Tract A at $1,800 per month, or approximately $93,600; both corporations demanded a common law jury trial under Art. XI, § 4 of the Missouri Constitution. The Freight Lines filed a separate answer and claim, purportedly as lessee of Tract 6, in which it asserted damage to it as the *lessee of Tract A* in the amount of $75,000. The City filed its motion to strike the claims and for an order denying intervention, except in so far as the Freight Lines might be permitted to participate as lessee of Tract 6 in any award made thereon. The grounds of the motion will be developed, generally, in our discussion of the issues. Upon a hearing held in advance of the taking of evidence, the court sustained the City's motion, struck the Joint Answer and Claim for Damages, and further ordered that if the Freight Lines so desired, the jury would be instructed to "make a division" of its award between the owner of Tract 6 and the lessee. No such request was made then or later. Thereupon, a jury of six freeholders was empaneled and evidence was heard. After the award was made, Mr. Stith filed his motion for a new trial and the Freight Lines and the Realty Company filed their joint motion for a new trial on the denial of their intervention, asserting that this was arbitrary and capricious, and that they were denied due process by the taking. All motions were overruled and the award was confirmed. Mr. Stith (and his wife), the Freight Lines and the Realty Company have filed and prosecuted this joint appeal. The case has been briefed for all appellants jointly, but separate points are made.

Appellant Stith contends, quoting: "The trial court erred in excluding evidence of the special value of the property herein condemned to its owners of record, appellants Stith, by reason of its highest and best use in conjunction with the adjacent Truck-Terminal property of the Chief Realty Company." The other defendants insist that they were holders of an "equitable interest" in the property condemned and that they were denied just compensation for the

taking under the Fifth Amendment to the United States Constitution and Article 1, § 26 of the Missouri Constitution.

The Respondent says: (1) that the jury was instructed to award the fair market value of the property, that it was further instructed to consider all the uses to which it might best be applied or was best adapted, and that the owner's theory of a "special value" was not properly applicable, there being no "unity of ownership"; (2) that, as to the attempted intervention, the Realty Company had no compensable interest in Tract 6 and that the Freight Lines was granted the right to participate, as lessee of that tract, in the final award, which was the only right it had.

Having stated these contentions, we now review briefly the evidence concerning the value of the property and its uses. The City's expert appraiser, after reviewing three different accepted methods of valuation and many sales of other properties, fixed a total value of $33,000; he testified that the property had a functional deficiency in its "lack of land," and that in his opinion it could not operate as an efficient terminal; that its highest and best use was for a rehabilitated storage and maintenance facility. Mr. Stith's appraiser also considered various sales in the general vicinity and fixed a total fair market value of $60,000; he further testified that in his opinion the highest and best use of the tract was as a truck terminal. Mr. Stith, after a little indecision, valued the property at "from $65,000 to $70,000." He further testified: that the tract was used as a freight terminal until the new one was built on Tract A; that it is now used for storage, maintenance, parking for over-the-road vehicles, and for "pickup and delivery" service; that the ownership of Tract 6 (in Stith) was a "factor" in the decision to build the new terminal on Tract A, and that the latter would be "obsolete" without the use of Tract 6 as it was then being used; that there is a ten year lease on Tract 6 to Chief Freight Lines, but he did not know the expiration date and had not

brought the lease; that he had discussed the leasing of that property to Spencer Chemical Company for storage, and that a specific rental had been discussed, but that the condemnation ended those negotiations; he did not specifically state what he considered to be the highest and best use of the property and, in effect, declined to do so.

■ The contentions of appellants are a little difficult to follow: apparently Mr. Stith claims that the court erred in "excluding" evidence of the special value of Tract 6 to *him* by reason of its use in connection with the terminal on Tract A; that, in other words, the court permitted the property to be considered as an isolated tract. At no place in the record did defendant's counsel offer the "special value" testimony now suggested, or make an offer of proof of such evidence by way of valuations or otherwise. However, Mr. Stith did testify, without objection, that a *factor* in deciding to build the new terminal on Tract A was the permissible use of Tract 6, and that the present terminal would be obsolete without the use of that tract; he also testified very fully concerning its then uses. The court sustained an objection to a question asking whether "his company" would be forced to move or sell, and properly so, for this would seem to have been purely speculative. Mr. Stith, as appellant, thus seeks to charge the trial court with a supposed error which the record does not support; except for the foregoing, neither he nor his counsel attempted to develop the subject of which they now complain, nor is the rejection of any evidence whatsoever complained of in Mr. Stith's motion for a new trial; in fact, the only real complaint in that motion is the supposed total inadequacy of the verdict. Certainly, in view of the divergent evidence, which we do not weigh here, we would not interfere on that score. Mr. Stith did not even state what, in his opinion, was the highest and best use; we may only assume that he considered the present use as such. He stated his opinion of the full, fair market value, without exceptions. Moreover, the jury

had evidence upon which to consider the actual and existing uses, and it viewed the property. See § 144, Art. VI, Kansas City Charter. Under these circumstances we cannot convict the trial court of error.

■ Counsel admit that the record "is unsatisfactory in this respect" and that "it is not readily apparent why this evidence was not presented." They state that the question arose on the motion to intervene, that the *corporations* wanted to prove the "special value" upon intervention, and that the court's ruling, as interpreted by counsel, precluded evidence of value based upon the "conjunctive use" of the two tracts. Without conceding the validity of the theory now advanced, we note that Mr. Stith was the owner in fee of Tract 6 and it was *his* fair market value which was being sought and ruled. There can only be one fair market value, determined as a whole, even when there are different interests. State ex rel. State Highway Commission v. Mahon et al., Mo.App., 350 S.W.2d 111. If Mr. Stith wished to press the point, specific evidence should have been offered. No error appears here.

■■ Solely with the view of preventing possible future misunderstanding, and perhaps as dicta, we note the separate and distinct ownerships of the two tracts and express a grave doubt that a mere unity of *use,* without a unity of ownership (or a single ownership) would support such a claim of special value as is made here and a submission upon any such theory, express or implied. See, generally, 27 Am. Jur.2d, Eminent Domain, § 315, pp. 134–135. Appellant seeks to establish a "unitization" of properties without a unitized ownership. The Missouri cases which have even considered the question of a supposedly increased value from a joint use have involved situations where there was a single ownership. St. Louis, Memphis & S. E. R. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 9 L.R.A.,N.S., 426; Kansas City S. B. R. Co. v. Norcross, 137 Mo. 415, 38 S.W. 299; Public Water Supply Dist. No.

2 of Jackson County v. Alex Bascom Co., Mo., 370 S.W.2d 281. We have not been cited to any Missouri case which upholds the consideration of such a "special value" in condemnation under similar facts. Under our Missouri Approved Instructions the "fair market value" is always the test. We mention three outstate cases cited by defendant. In McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205, the principal consideration was of a proposed future use (the growing of sugar cane) which would require irrigation from water sources off of the particular tract; however, it appeared that the defendant owned other land from which the water might be brought. In United States v. 3,-276.21 Acres of Land (S.D. Cal.), 194 F. Supp. 297, the landowner's contention that the use of the tract under condemnation should be considered along with an adjoining tract (in order to furnish access) was sustained, but the second tract was, at the time of the taking, in the process of being transferred to the defendant with the papers in escrow, and the transaction was closed prior to trial. The case of United States ex rel. Tennessee Valley Authority v. Powelson et al., 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390, may well be considered as denying a consideration of special value because there were existing diverse ownerships, for the majority of the court held that the defendant could not necessarily acquire the other land by condemnation. We do not discuss the possibility of such a binding contract between owners of different tracts as might conceivably supply the equivalent of a single or joint ownership. In City of St. Louis v. Union Quarry & Construction Co., Mo., 394 S.W.2d 300 (the only Missouri case cited), the land in question was an abandoned, partly filled rock quarry. No common use with any other tract was involved. The court merely held that the land was capable of only one peculiar use, and that it should not have been valued as an area of residential property; to that extent only did the court hold that the jury should consider "a special adaptation for a particular use." There

can be no contention here that Tract 6 can only be used for one purpose; indeed, the owner testified that he had negotiated for a lease devoted to other and independent uses. The jury could, and presumably did, consider all .possible uses of Tract 6, general and special, to which it was adapted. The jury was properly instructed on the question of valuation and the first claim of error is denied.

■ The second point involves Chief Freight Lines and Chief Realty Company, the corporations; they complain of the denial of their motion for leave to intervene, insisting that they held an equitable interest in Tract 6, and that they have been denied the right to just compensation for the taking, thus violating both the federal and state constitutions. We have already stated, but we repeat here, that the court gave the Freight Lines leave to present its claim as lessee of Tract 6 and to have the jury instructed to apportion its award; obviously it pursued that matter no further. The point now made in the brief does not involve that separate claim, but only the joint attempt to intervene.

■ It is clearly recognized that, in order to justify an intervention, the intervening party must have an *interest* in the subject matter of the pending action. Civil Rule 52.11, V.A.M.R.; State ex rel. State Farm Mutual Auto Ins. Co. v. Craig, Mo. App., 364 S.W.2d 343, 95 A.L.R.2d 1321; Ozark County School Dist. R–V of Ozark County v. Lay, Mo.App., 358 S.W.2d 77; State ex rel. Farmers Mutual v. Weber, 364 Mo. 1159, 273 S.W.2d 318; Laclede Gas Co. v. Abrahamson, Mo., 296 S.W.2d 100, 61 A.L.R.2d 1286. In Weber, supra, the court said, loc. cit. 321 of 273 S.W.2d: "As used in the above quoted portion of Section 507.090, and in intervention statutes generally, 'interest' means a direct and immediate claim to, and having its origin in, the demand made or proceeds sought or prayed by one of the parties to the original action, but such 'interest' does not include a mere consequential, remote or conjectural

possibility of being in some manner affected by the result of the original action; to come within the above statute, the 'interest' must be such an immediate and direct claim upon the very subject matter of the action that intervener will either gain or lose by the *direct operation* of the judgment that may be rendered therein."

■ Defendants quote from the case of Millhouse v. Drainage Dist. No. 48 of Dunklin County, Mo.App., 304 S.W.2d 54, at loc. cit. 58, the following: "The interest held, the property for which compensation must be rendered, though not necessarily the corporeal thing itself, must consist of *some definite right or domination in and over the physical thing, such as the right of user, or exclusion, or disposition.* A mere contractual relationship is not sufficient in itself." They also cite Hamer v. State Highway Commission, Mo., 304 S.W. 2d 869; Peters v. Buckner, 288 Mo. 618, 232 S.W. 1024, 17 A.L.R. 543, and State ex rel. Britton v. Mulloy, 332 Mo. 1107, 61 S.W.2d 741. In none of those cases did the factual situation approach that present here. In the first two the claims were denied. In Peters (followed later by Britton) it was held that the owners of lots in a subdivision in which all the deeds contained restrictive covenants limiting buildings to residences had sufficient interest to require the payment of compensation where certain lots in the subdivision were taken for school purposes. That ruling seems to have been seriously questioned in Albrecht v. State Highway Commission, Mo., 363 .S.W.2d 643, but the case was eventually distinguished. We do so here, upon the ground that the supposed interests or "easements" in Peters and Britton, supra, arose out of covenants in acknowledged and recorded deeds, and that they constituted legal and enforceable rights. For a more detailed discussion of the subject, generally, see Nichols on Eminent Domain, Vol. 2, § 5.73[1] and [2]. In our present case the corporations rely upon a mere understanding (not even posed as a valid oral contract) between Mr. Stith and the

corporations that the Freight Lines might continue to use Tract 6 for its operations; neither the duration, the conditions, the expense of much needed rehabilitation of the property, nor the question of compensation, are claimed to have been fixed in any such understanding. On the other hand, it is shown that the Freight Lines held an existing, written ten year lease on Tract 6, with presumably a substantial time yet to run; the lease was not produced, and the reason would seem obvious, for it would conflict with a mere oral "understanding." We hold that any and all oral intentions or understandings of the parties were merged into the written lease, and that its terms cannot be thus varied by parol testimony; for all we know, the lease may have contained options of renewal from term to term, but the lessee did not elect to pursue its rights to an apportionment of one final award on the tract.

■ These defendants claim that they have an "equitable servitude" upon Tract 6, by reason of the "understanding" and the joint use. No Missouri case is cited which upholds any such interest under circumstances even remotely similar. Counsel cite 5 Harvard Law Review 274 (1891–1892); Clark on Equity, § 96, p. 119, under "Specific Performance of Contracts"; Tulk v. Moxhay (Chancery 1848) 2 Phillips 774. We feel that little would be gained by discussing those authorities; Tulk, supra, involved a covenant in a deed, and the theory as a whole would seem to require an enforceable contract. None is demonstrated here. Counsel recognize that the only Missouri case "which even approaches the issues" is Peters v. Buckner, supra; if we felt that that opinion was strictly applicable, we could re-examine its holding, but we have already distinguished it, at least to our satisfaction. We feel that it would be clearly improper to encumber real estate titles and interests with mere understandings or intents; and particularly is this true when the parties had presumably incorporated their supposed understandings into a written lease, as already noted. We hold

that the corporations had no *property rights* in Tract 6; certainly they had no mandatory right to intervene, and the court did not abuse its discretion in denying the intervention. No constitutional rights were denied or invaded.

So ruling, it is not necessary that we discuss the point made by the city that any possible damage suffered by the corporations would consist of a mere speculative loss of profits which is not compensable in condemnation proceedings. 27 Am.Jur.2d, Eminent Domain, § 285, pp. 83–84; City of St. Louis v. St. Louis, I. M. & S. R. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713; Tate v. State Highway Commission, 226 Mo.App. 1216, 49 S.W.2d 282. Defendants say that they were wrongfully prevented from appearing as proper claimants and from establishing their "concept of highest and best use of the property" (Tract 6). It is true that they were so prevented, but we hold that there was no error in the ruling.

The judgment is affirmed.

All of the Judges concur.